HELLER EQUITY CAPITAL CORPORATION, Plaintiff-Appellee, v. CLEM ENVIRONMENTAL CORPORATION, Defendant-Appellant.

First District (6th Division)   No. 1—91—2778

Opinion filed July 10, 1992.

Thomas R. Mulroy, Susan B. Cohen, and Debbie L. Moeckler, all of Jenner & Block, of Chicago, for appellant.

Terry M. Grimm, Paul P. Biebel, Jr., Timothy J. Rivelli, and Julie A. Bauer, all of Winston & Strawn, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Heller Equity Capital Corporation (HECC), as assignee of Heller Financial, Inc. (Heller), filed an action in the circuit court of Cook County seeking: (1) a declaratory judgment that a letter agreement (agreement) entered into between Heller and defendant, Clem Environmental Corporation, in connection with certain financing Heller provided to defendant was valid and enforceable; and (2) specific performance of the agreement requiring defendant to issue 2,000 shares of preferred stock to HECC. Defendant pled an affirmative defense maintaining that the letter agreement was void and unenforceable because performance under the agreement would violate the Bank Holding Company Act of 1956 as amended (BHC Act) (12 U.S.C. §1843 (1988)), and later moved to stay the proceedings pending referral to the Federal Reserve Board (FRB).

The trial court struck defendant's affirmative defenses and denied defendant's motion for a stay of proceedings pending referral to the FRB. Summary judgment was granted in favor of HECC, and the judge ordered specific performance for the issuance of the stock. On appeal, defendant challenges each ruling made by the trial court.

We adduce the following factual background from the affidavits, pleadings, and documents filed. HECC, an affiliate of Heller, is a commercial finance small business investment company (SBIC) licensed under the Small Business Investment Act (SBI Act). Subsequent to the transaction at issue, Heller became a commercial finance subsidiary of Fuji Bank, a registered bank holding company. Defendant is a small, closely held corporation engaged in the manufacture of bentonite fibermat liners used for landfills. Heller and defendant had extensive financial dealings with each other prior to the execution of this agreement.

It is undisputed that on December 28, 1982, as partial consideration for a loan made by Heller to finance defendant's business, the parties entered into an agreement which provided for: (1) the sale of 1,000 shares of preferred stock to Heller for a purchase price of $1,000; (2) granted Heller an irrevocable option to purchase an additional 1,000 shares of preferred stock for a purchase price of $1,000 to remain in effect for five years; (3) the amendment of defendant's articles of incorporation and bylaws to authorize the issuance of the preferred stock; and (4) the conversion of the preferred stock into

common stock, which, upon issuance thereof, shall equal 25% of the issued common stock of the company any time subsequent to January 1, 1986. The agreement also provided that it would be binding upon the successors and assigns of defendant and Heller, and did not require the consent of the parties to transfer those rights.

On February 25, 1986, defendant sought to borrow an additional $100,000 from Heller. A second agreement was executed in which Heller exercised its option to purchase the additional shares of preferred stock, and the parties agreed to change the date after which the preferred stock could be converted to common stock from January 1, 1986, to January 1, 1987. At the time of the second agreement, defendant acknowledged that its liabilities under the loan agreement equalled $1,665,053.

On June 26, 1990, Heller contributed its rights to the convertible preferred stock by way of a capital contribution to HECC. The record reveals that, pursuant to an informal conversation between representatives from Heller and the Small Business Administration (SBA), such a transfer was permissible so long as HECC did not try to count the shares as capital for purposes of leverage until the shares were actually sold for cash. Defendant meets the requirements of a small business concern under the SBI Act. Despite numerous requests from both Heller and later from HECC, defendant refused to issue the stock.

As its first affirmative defense in this cause, defendant argued that the BHC Act prohibits a direct or indirect subsidiary of a bank holding company from acquiring more than 5% of the voting shares of a company, or more than 25% of the total equity or total outstanding shares of a company. (12 U.S.C. §1843(c)(6) (1988); 12 C.F.R. §§225.22(c)(5), 225.143 (1990).) Defendant maintained that on January 1, 1987, the preferred stock became automatically convertible to common stock representing 50% of defendant's then outstanding voting common stock, which is impermissible under section 4 of the BHC Act. Secondly, defendant alleged that the agreement violated the SBI Act, which prohibits a small business investment company from owning 50% or more of the outstanding voting securities of a small business concern.

On May 25, 1990, defendant contacted the FRB and requested an investigation of whether a demand by Heller that defendant issue preferred stock representing 50% of its equity violated the provisions of the BHC Act. On July 10, 1990, Heller responded to the FRB's inquiry and offered two points for its consideration: (1) that Fuji Bank and new Heller management played no significant role in the transac-

tion at issue; and (2) defendant was a qualifying small business corporation, and the rights to defendant's preferred stock could have been structured as an SBIC investment. Heller further stated that as soon as the problem came to its attention in 1988, it attempted to negotiate in good faith with defendant to cure the problem. After defendant refused to negotiate in good faith, Heller transferred its rights to defendant's preferred stock to its SBIC affiliate, HECC.

On December 5, 1990, defendant also requested review by the SBA of the propriety of the issuance of the stock. On December 7, 1990, defendant advised the FRB of the pendency of this lawsuit. On May 14 and June 14, 1991, defendant requested a status report of the FRB's review of the matter. To date, defendant has received no further communication from the FRB.

On April 30, 1991, defendant filed a motion to stay these proceedings pending referral to the FRB and the SBA. In that motion, defendant contended that the FRB and the SBA were currently investigating the permissibility of the stock transfer under the BHC Act and the SBI Act. (The SBA has since informed defendant that the issuance of the 2,000 shares of stock does not violate the SBI Act so long as the preferred stock is not converted into voting stock. Defendant does not intend to appeal the SBA's determination.)

On July 25, 1991, the trial court entered an order striking defendant's affirmative defenses. Specifically, the trial judge concluded that: (1) the BHC Act does not expressly declare contracts in violation of the BHC Act void; (2) the FRB has exclusive jurisdiction over original BHC Act claims; (3) Heller's assignment of its rights under the agreement to HECC cured any violation of the BHC Act; and (4) defendant would benefit if the agreement is deemed void. The trial court denied defendant's motion for a stay pending appeal.

On appeal, defendant first argues that the court erred in striking its affirmative defense of illegality because performance of the agreement would violate the BHC Act. Defendant asserts that section 4(c)(6) of the BHC Act prohibits a bank holding company from acquiring more than 5% of the outstanding voting shares of nonbanking companies. Defendant contends that Heller made this concession in its July 10, 1990, letter to the FRB when it admitted that the issuance of the stock would create "problems" under the BHC Act. Also, the trial judge stated that "under the original matter with Walter Heller it would appear that it does violate the BHC Act."

Defendant further contends that the fact that the BHC Act does not declare a contract in violation of the Act is irrelevant. Defendant relies upon *E & B Marketing Enterprises, Inc. v. Ryan* (1991), 209

Ill. App. 3d 626, 568 N.E.2d 339 (parties' contract amounted to illegal fee-splitting agreement and was therefore void), and *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling* (1977), 53 Ill. App. 3d 611, 368 N.E.2d 1057 (contract and note executed by members of buyers' club were void as violating Regulation Z promulgated under Truth in Lending Act), as support for its position that because the agreement violates the BHC Act it is unenforceable, regardless of whether the BHC Act explicitly declares that it is void. Relatedly, defendant argues that even if the FRB has exclusive jurisdiction over BHC Act claims, defendant may still assert an alleged violation as an affirmative defense.

In *Orbanco, Inc. v. Security Bank* (D. Or. 1974), 371 F. Supp. 125, the United States district court determined that the FRB had primary jurisdiction to consider possible violations of the BHC Act. The *Orbanco* court offered the following explanation as the rationale behind investing primary jurisdiction in the FRB:

> "The Board is qualified to make the economic decisions demanded by the Bank Holding Company Act. They are required to consider the public interest, the anti-competitive effects of the proposed transactions, and the convenience and needs of the community to be served. Congress intended that the technical and complex problems involved in the application of the Bank Holding Company Act to the banking industry should be resolved, at least in the first instance, by a body of experts. They know the competitive realities of the banking business. This subject is outside the conventional experience of judges." *Orbanco*, 371 F. Supp. at 130.

More recently, in *Centerre Bancorporation v. Kemper* (E.D. Mo. 1988), 682 F. Supp. 459, a bank holding company brought an action under the BHC Act seeking to enjoin another company from acquiring additional shares of its stock. The district court again held that the FRB has exclusive jurisdiction over BHC Act violations and that the BHC Act does not expressly provide for a private cause of action for any alleged violations.

In this case, both parties agree that the FRB has exclusive jurisdiction to determine alleged violations of the statute and the regulations thereunder. On July 10, 1990, Heller sent the FRB a detailed explanation of its version of the transaction. The FRB has not contacted Heller for any additional information, or issued any warning or notice of violation of the BHC Act. Indeed, as previously stated, the FRB has not acted upon defendant's request for investigative review of the

propriety of the stock issue over the past two years, despite numerous requests by defendant for status reports.

Defendant attempts to distinguish the present case by conceding that while the FRB may have exclusive jurisdiction over claims brought pursuant to the BHC Act, exclusive jurisdiction does not apply to claims raised by way of affirmative defense. "Affirmative matter," for purposes of avoiding the effect or of defeating the claim, is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. (*Brown v. Morrison* (1989), 187 Ill. App. 3d 37, 542 N.E.2d 1308.) It must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint, for, as in the case of a motion under section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), such well-pleaded facts must be taken as true for the purposes of a motion to dismiss under section 2—619(a)(9) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)). *Brown v. Morrison*, 187 Ill. App. 3d 37, 542 N.E.2d 1308.

■ After examining the BHC Act and the FRB regulations, the trial court correctly concluded that any purported illegality in this agreement found by the FRB would impact Heller only, for privity existed between the FRB and Heller for any alleged violation of FRB regulations. The rules and regulations of the FRB were not promulgated to protect the third party in a contractual relationship, such as the defendant in this transaction. See *Centerre Bancorporation*, 682 F. Supp. 459 (BHC Act does not expressly provide for a private cause of action); *Quaker City National Bank v. Hartley* (S.D. Ohio 1981), 533 F. Supp. 126 (no private right of action existed under the BHC Act).

Moreover, the FRB could order the disposition of the stock in any manner it deemed appropriate, such as divesture, sale, or transfer of the asset. Assuming *arguendo* that the agreement was illegal, the FRB had several options available to correct the situation rather than simply voiding the agreement in its entirety. Thus, defendant's assertion that the agreement was illegal and therefore void is purely speculative under the circumstances and cannot rightfully be advanced as an affirmative defense.

Defendant further contends that Heller's assignment to HECC did not cure the illegality of the agreement. HECC counters defendant's allegations by stating that issuance of the preferred shares is permissible within the express provisions of the BHC Act. Under section 4(c)(5) of the BHC Act, a bank holding company subsidiary such as

Heller may acquire "shares which are of the kinds and amounts eligible for investment by national banking associations under the provisions of section 24 of [title 12]." (12 U.S.C. §1843(c)(5) (1988).) Further, pursuant to 15 U.S.C. §682(b) (1992), shares of stock in small business investment companies shall be eligible for purchase by national banks. We agree with HECC.

Any illegality in the original agreement was effectively cured by the assignment of Heller's interest to HECC. As previously stated, the agreement explicitly permitted Heller to assign its interest without the consent of defendant. Most importantly, the SBA concluded that when Heller contributed its rights to the convertible preferred stock by way of a capital contribution to HECC, such a transfer was permissible so long as HECC did not try to convert defendant's preferred stock into voting stock, or if the preferred stock became voting stock by operation of law. In this case, the trial court properly struck defendant's affirmative defense, for defendant failed to prove any set of circumstances wherein it could avoid its responsibilities to deliver the preferred stock pursuant to the agreement.

■ Defendant next contends that the court abused its discretion in refusing to grant a stay of the proceedings until the FRB acted because all of the requirements for a stay under the primary jurisdiction doctrine have been met. Defendant maintains that the issues raised in this cause are within the unique administrative expertise of the FRB and its decision will ensure uniformity in this highly regulated area. Further, application of the primary jurisdiction doctrine is particularly compelling because an action is already pending before the FRB.

The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. (*Peoples Energy Corp. v. Illinois Commerce Comm'n* (1986), 142 Ill. App. 3d 917, 492 N.E.2d 551.) No fixed formula exists for applying the doctrine of primary jurisdiction; rather, in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. *Peoples Energy Corp.*, 142 Ill. App. 3d 917, 492 N.E.2d 551.

We are unpersuaded by defendant's arguments that a stay of the proceedings should have been granted. Defendant has failed to demonstrate with any reasonable degree of certainty to what stage, if any, the FRB's investigation has progressed. Indeed, defendant has failed to present any evidence that the FRB has any intention of pursuing this matter any further. As such, we cannot abide by defendant's at-

tempt to prolong the issuance of the preferred stock to HECC and continue to thwart the purpose of the agreement.

■■ Defendant's last argument posits that the trial court erred in granting summary judgment for HECC because defendant has pled a valid affirmative defense.

The purpose of summary judgment is to determine whether there are any issues of genuine material fact. (*Kelman v. University of Chicago* (1988), 166 Ill. App. 3d 137, 519 N.E.2d 708.) An order granting summary judgment is appropriate where the pleadings, depositions on file, together with the affidavits, if any, demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In view of our determination that defendant failed to plead a valid affirmative defense, we find that summary judgment was properly granted.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.