REVISED DECEMBER 30, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-30430

In The Matter Of: OCA, INC, formerly doing business as Orthodontic Center of America; ORTHALLIANCE NEW IMAGE; ORTHODONTIC CENTERS OF TEXAS INC; PEDOALLIANCE INC; ORTHOALLIANCE, INC, a Delaware Corporation

Debtors

DOUG CROSBY, DDS, DONALD B DOAN, DDS, GLENWOOD JORDAN, DDS, ELGIN E WELLS;

Plaintiffs-Appellees

OCA INC, A Delaware Corp; PEDOALLIANCE INC;

Plaintiffs-Appellants

RICHARD R WOEHRLE, DDS, MS; MICHAEL M DILLINGHAM DDS PC, a Texas Professional Corporation; MICHAEL M. DILLINGHAM, DDS; AUSTIN ORTHODONTIC SPECIALISTS; ROBERT P. BUCK; BUCK ORTHODONTICES ASSOCIATES PC; STEPHEN N COLE; BAY AREA ORTHODONTICES PC

Plaintiffs-Appellees

v.

ORTHALLIANCE NEW IMAGE; ORTHONDONTIC CENTERS OF TEXAS INC;

Defendants-Appellants

DUDLEY M HODGKINS; DUDLEY M HODGKINS, DDS, MSD, PC, A Texas Professional Corp; WILLIAM R IZZARD; RUBY IZZARD DDS PC

Defendants-Appellees

ORTHOALLIANCE INC, a Delaware Corporation;

Defendant-Appellant

RON RISINGER, D.D.S.; RON RISINGER, DDS PC

Movants-Appellees

---

ROBERT PACKARD; PACKARD ORTHODONTICS PA

Amicus Curiae

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Louisiana

---

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

GARWOOD, Circuit Judge:

Debtors-appellants OCA, Inc., formerly doing business as Orthodontic Centers of America, Inc.; OrthAlliance New Image, Inc.; Orthodontic Centers of Texas, Inc.; PedoAlliance, Inc.; and OrthAlliance, Inc. (collectively "OCA") directly appeal the January 17, 2007 interlocutory order of the bankruptcy court granting partial summary judgment and holding that the Business Services Agreements or Management Agreements (collectively the "BSAs") that OCA

entered with a number of orthodontists and their professional corporations (collectively the "Orthodontists)[1] were illegal under Texas law. We affirm.

FACTS AND PROCEEDINGS BELOW

This case arises out of a dispute over various BSAs, which OCA had entered into with Orthodontists in the state of Texas.[2] According to the terms of the BSAs, OCA purchased or leased office space and purchased equipment for each office. OCA was also responsible for billing patients, filing insurance claims, hiring nondental personnel, setting dress codes, and managing a bank account through which the dental practice's funds flowed. The Orthodontists were not authorized to withdraw funds from the operating account, so OCA periodically transferred money from these accounts to pay the Orthodontists their compensation. In exchange, the Orthodontists agreed to work a minimum number of hours each week at the practice and not to perform orthodontic work outside that office. The Orthodontist would receive an hourly rate for seeing patients, and OCA would receive an hourly management fee in addition to being reimbursed for its overhead. Profits were then split according to the respective ownership interests of OCA and the Orthodontists. The BSAs were to be in force

---

[1] The following dentists and professional corporations were parties to this appeal: Doug Crosby, D.D.S.; Donald B. Doan, D.D.S.; Elgin E. Wells; Dudley M. Hodgkins; Dudley M. Hodgkins, D.D.S., M.S.D., P.C., a Texas Professional Corporation; Lisa L. Kerns; Lisa Loomis Kerns, D.D.S., P.C., a Texas Professional Corporation; William F. Terhune; William F. Terhune, D.M.D., P.C., a Texas Professional Corporation; William R. Izzard; Rudy Izzard, D.D.S., P.C.; Richard R. Woehrle, D.D.S., M.S.; Michael M. Dillingham, D.D.S., P.C., a Texas Professional Corporation; Michael M. Dillingham, D.D.S.; Austin Orthodontic Specialists, Inc.; Robert P. Buck; Buck Orthodontics Associates, P.C.; Stephen N. Cole; Bay Area Orthodontics, P.C.; Ron Risinger, D.D.S.; Ron Risinger, D.D.S., P.C.; Don A. Woodworth, D.D.S.; Woodworth Orthodontics, P.A.. Lisa L. Kerns; Lisa Loomis Kerns, D.D.S., P.C., a Texas Professional Corporation; William F. Terhune; William F. Terhune, D.M.D., P.C., a Texas Professional Corporation; and Richard R. Woehrle, D.D.S., M.S. were dismissed as parties to this appeal before oral argument because they reached a settlement with OCA.

[2] OCA entered into contracts with orthodontists in many states, but this appeal only deals with contracts between OCA and orthodontists practicing in Texas.

for long periods of time, some up to forty years, and their terms severely restricted the Orthodontists' ability to terminate or assign them.

The Orthodontists entered this case at various points in the litigation stream. Appellee orthodontist Buck initially brought suit against Orthalliance, Inc. in Texas state court seeking an accounting and a declaration that his BSA was void for illegality under Texas law. The case was removed to federal court and later transferred to the United States District Court for the Northern District of Texas on November 11, 2002. Appellee orthodontist Cole brought a similar suit that was eventually consolidated with Buck's case and others in Penny v. OrthAlliance, Inc. ("Penny"), Case No. 3:01-CV-1569-N, in the Northern District of Texas, in June 2004.[3] The district court severed Cole's and Buck's cases from the Penny litigation in July 2005. OCA's filing for chapter 11 protection in the proceedings below in the Eastern District of Louisiana stayed Cole's and Buck's cases on March 6, 2006. The bankruptcy court, however, lifted the stay for the purpose of allowing the Northern District of Texas district court to rule on whether Buck's and Cole's BSAs were void for illegality under Texas law. On November 20, 2006, the district court for the Northern District of Texas held that the BSAs were void for illegality because they were nearly identical to the contracts in Penny that were held to be illegal under Texas Occupation Code § 251.003(a)(4). The district court then transferred the remainder of the case to the bankruptcy court for the Eastern District of Louisiana.

Appellee orthodontist Izzard terminated his BSA in April 2005, before OCA filed for bankruptcy. Appellees orthodontists Wells, Doan, Dillingham, Crosby, Jordan, and Woodworth were still performing under their respective BSAs when OCA filed for bankruptcy.

---

[3] See Penny v. Orthalliance, Inc., 255 F. Supp. 2d 579 (N.D. Tex. 2003).

After filing for chapter 11 protection, OCA, as debtor in possession, commenced adversary proceedings in the bankruptcy court against Hodgkins and Izzard seeking a declaration that their BSAs were not void for illegality under Texas law. Appellees orthodontists Doan, Crosby, Wells, and Dillingham brought adversary proceedings seeking to have their BSAs declared void for illegality. In a contested proceeding, appellee orthodontist Woodworth filed a motion for summary judgment, which sought to have his BSA declared void for illegality. The bankruptcy court held a joint hearing to determine the legality of all of the Texas BSAs on January 10, 2007. At this hearing, the bankruptcy court announced from the bench that it was granting the Orthodontists' motions for partial summary judgment and holding that the BSAs were void for illegality under Texas law based on several prior Texas federal district court rulings in similar cases. The bankruptcy court entered its Order Granting Partial Summary Judgment on January 17, 2007.

On January 19, 2007, OCA moved to have the bankruptcy court certify its interlocutory judgment for direct appeal under 28 U.S.C. § 158(d)(2), and the Orthodontists moved to have the January 17, 2007 order made final. On March 7, 2007, the bankruptcy court granted OCA's motion and certified that the requirements to directly appeal its January 17, 2007 order to the Fifth Circuit were present. It also denied the Orthodontists' motions to make its earlier judgment final.[4] OCA filed its petition for direct review of the bankruptcy court's interlocutory order with the Fifth Circuit on March 16, 2007. The petition was granted on May 15, 2007.

## JURISDICTION

---

[4] On March 9, 2007, the bankruptcy court separately denied Woodworth's motion to make his judgment final and granted OCA's motion to certify the bankruptcy court's January 17, 2007 order for direct appeal with respect to Woodworth.

5

OCA directly appealed to this court the bankruptcy court's January 17, 2007 interlocutory order pursuant to 28 U.S.C. § 158(d)(2). This statute was enacted to provide for direct review of bankruptcy court judgments, orders, or decrees by the applicable court of appeals in cases where the bankruptcy court or the district court certify that there is no controlling decision from the Supreme Court or circuit court, the case involves a matter of public importance, there are conflicting precedents, or an immediate appeal may materially advance the progress of the bankruptcy proceeding. 28 U.S.C. § 158(d)(2)(A)(i)–(iii). If this certification is made, the applicable court of appeals has jurisdiction if it authorizes the direct appeal. Id. § 158(d)(2)(A).

On March 7, 2007, the bankruptcy court certified that this case met the requirements for direct appeal because it involved a question of law on which there was no controlling decision by the Fifth Circuit or the Supreme Court, it involved a matter of public importance, and a direct appeal would materially advance the progress of the case. A panel from this court granted OCA's petition for leave to appeal under section 158(d). The only question is whether section 158(d)(2) permits this court to hear direct appeals from interlocutory orders of bankruptcy courts.[5]

The text of the statute grants the courts of appeals "jurisdiction of appeals described in the first sentence of subsection (a)." Id. § 158(d)(2)(A) (emphasis added). The first sentence of section 158(a) grants district courts jurisdiction over bankruptcy appeals from interlocutory orders or decrees if granted leave by the district court. Id. § 158(a)(3). Since interlocutory orders are included in the first sentence of subsection (a) and all of the other jurisdictional prerequisites

---

[5] Prior to the adoption of section 158(d)(2), this court generally lacked jurisdiction to review interlocutory orders of bankruptcy courts. Promenade Nat'l Bank v. Phillips (In re Phillips), 844 F.2d 230, 231 (5th Cir. 1988).

of section 158(d)(2) are met, this court has jurisdiction to hear OCA's direct appeal from the bankruptcy court.[6]

Since this is an appeal from an interlocutory order from the bankruptcy court regarding a question of law on which there is no controlling precedent, we will treat this appeal essentially as we treat certified questions from district courts. See 28 U.S.C. § 1292(b).

## DISCUSSION

The Texas Occupations Code prohibits a person from practicing dentistry without a license. Tex. Occ. Code § 256.001. Texas defines practicing dentistry as engaging in any one of ten different activities. See Tex. Occ. Code § 251.003(a). In this case, the bankruptcy court granted the Orthodontists' motions for partial summary judgment and held that the BSAs between OCA and the Orthodontists were void for illegality because they enabled OCA, which is unlicensed, to practice dentistry without a licence by owning, maintaining, or operating a place of business in which it employed or engaged by contract someone else to practice dentistry. Tex. Occ. Code § 251.003(a)(4).[7] OCA argues

---

[6] Woodworth argues that his appeal is not properly before this court because the certification for direct appeal of his case was not signed until March 9, 2007, which was more than 30 days after the judgment was entered on January 17, 2007. At oral argument Woodworth argued that his case was distinguishable from the other orthodontists because his was a contested proceeding, not an adversarial proceeding, and his judgment is final. Assuming arguendo that Woodworth is correct and his judgment is final, his argument still fails because a party may request certification for direct appeal up 60 days after the entry of the judgment, order, or decree. 28 U.S.C. § 158(d)(2)(E). This 60 day limit applies regardless of whether the judgment, order, or decree is final or interlocutory. OCA received certification for direct appeal on March 9, 2007, which is within 60 days of the entry of the judgment or order to be appealed on January 17, 2007. Therefore, the appeal was timely filed. Additionally, Woodworth argued that his case was not properly included in OCA's petition for leave to appeal to the Fifth Circuit. After reviewing the record, however, we conclude that OCA did properly include Woodworth in its petition for direct appeal, so this court does have jurisdiction over his appeal.

[7] Section 251.003(a)(4) provides "(a) For purposes of this subtitle, a person practices dentistry if the person: . . . (4) owns, maintains, or operates an office or place of business in which the person employs or engages under any type of contract another person to practice

7

that this ruling was erroneous because it is a corporation and is hence not a "person" under section 251.003(a)(4), the bankruptcy court should have permitted the parties to use the severability clause in the BSAs to cure the BSAs' illegality, and the bankruptcy court failed to consider whether an assignment of part of OCA's rights or obligations under the BSAs to an affiliate would have rendered the BSAs legal.

I.    Standard of Review; Applicable Law

When directly reviewing an order from a bankruptcy court, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. FED. R. BANKR. P. 8013; Drive Fin. Servs., L.P. v. Jordan, 521 F.3d 343, 346 (5th Cir. 2008). A lower court's grant of summary judgment presents a question of law reviewed de novo. Since all of the BSA's in this appeal involved the practice of dentistry in Texas, Texas law governs their enforceability. See Butner v. United States, 99 S.Ct. 914, 918 (1979) ("Property interests are created and defined by state law. . . . [T]here is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")

II.    Are Corporations "Persons" for Purposes of Section 251.003(a)(4)?

Legislation governing the operations of dentists is codified in the Texas Occupations Code (the "Code"). When the Code was recodified in 1999, the legislature added section 1.002, which provides that the "Government Code (Code Construction Act), applies to the construction of each provision in this code except as otherwise expressly provided by this code." Tex. Occ. Code § 1.002. The Texas Government Code defines the term "person" to include corporations "unless the statute or context in which the word or phrase is used requires a different definition." Tex. Gov't Code § 311.005(2).

---

dentistry; . . . ."

Section 251.003(a) does not contain its own definition of "person," but nevertheless, OCA argues that the term should not be read to include corporations. The basis of its argument is that the recodification of the Code was not meant to enact substantive change in the law and the prior version of section 251.003(a)(4) did not itself expressly include corporations in its definition of person. See Tex. Occ. Code § 1.001(a) (stating that the revisions were not meant to make any substantive changes).

The previous version of section 251.003(a)(4) provided that anyone who engaged in the following conduct was engaged in dentistry:

> "(4) Any one who owns, maintains or operates any office or place of business where he employs or engages under any kind of contract whatsoever, any other person or persons to practice dentistry as above defined shall be deemed to be practicing dentistry himself, and shall himself be required to be duly licensed to practice dentistry as hereinabove defined and shall be subject to all of the other provisions of this Chapter, even though the person or persons so employed or engaged by him shall be duly licensed to practice dentistry as hereinabove defined." Tex. Rev. Civ. Stat. art. 4551a(4) (1935) (emphasis added) ("Article 4551a(4)").

OCA argues that the references to he, himself, and him limit the definition of "person" to natural persons.

OCA also notes that Article 4551a(4) was passed in 1935 along with an identical criminal statute, Tex. Penal Code art. 754a(4) (1935) ("Article 754a(4)"), which only applied to natural persons. OCA argues that the doctrine of in pari materia requires the civil statute and the penal statute to be read in harmony because they were adopted by the same legislature regarding the same subject matter. See Garrett v. Mercantile Nat'l Bank at Dallas, 168 S.W.2d 636, 637 (Tex. 1943); Braun v. State, 49 S.W. 620, 622-23 (Tex. Crim. App. 1899). Consequently, the civil statute should be read to only apply to natural persons because the criminal statute's application was limited to natural persons.

One problem with this argument is that when these statutes were passed Texas did not subject corporations to criminal liability. See Robert W. Hamilton, Corporate Criminal Liability in Texas, 47 TEX. L. REV. 60, 60 (1968) (noting that Texas did not subject corporations to criminal prosecutions at that time); see also Linda C. Anderson, Corporate Criminal Liability for Specific Intent Crimes and Offenses of Criminal Negligence—The Direction of Texas Law, 15 ST. MARY'S L.J. 231, 233 (1984) (stating that the Texas Penal Code was revised in 1974, and that revision incorporated many of Professor Hamilton's suggestions and imposed criminal liability on corporations). Since Texas did not subject corporations to criminal prosecution before 1974, the fact that Article 754a(4) did not apply to corporations tells us little about whether Article 4551(a)(4), a civil statute, was meant to apply to corporations.[8]

That still leaves OCA's argument that the previous iteration of section 251.003(a)(4) did not apply to corporations. However, since at least 1925 it has been the law in Texas that in civil statutes "unless a different meaning is apparent from the context" the word "'Person' includes a corporation." Article 23(2) Revised Civil Statutes of Texas, 1925, repealed by Acts 1985, 69th Leg. ch. 479, § 224. This provision was essentially replaced by the above referenced provision of TEX. GOV'T CODE § 311.005(2), likewise enacted by Acts 1985, 69th Leg., ch. 479, § 1. See also, e.g., James N. Tardy Co v. Tarver, 39 S.W.2d 848, 850 (Tex. 1931) ("person" in Texas civil statute includes corporation under Article 23); Wyche v. Wichita Engineering Co., 374 S.W.2d 728, 732 (Tex. Civ. App.–Dallas 1964, writ ref'd n.r.e.) (same); United States v. Texas Construction Co., 237 F.2d 705, 706 (5th Cir. 1955) (same; not citing Article 23).

---

[8] Furthermore, Texas courts apply the doctrine of in pari materia to resolve contradictions between two statutes that cover similar subjects. S. Pac. Co. v. Sorey, 140 S.W. 334, 336 (Tex. 1911). But it is not contradictory for a civil sanction to be broader than a criminal sanction for the same conduct.

Assuming arguendo that OCA's argument is correct, we would have to determine how to apply recodified section 251.003(a)(4) when, on the one hand, there is the general legislative directive that the recodification was not meant to make substantive changes to the law, Tex. Occ. Code § 1.001(a), and, on the other hand, the current statutory definition of "person" includes corporations "unless the statute or context in which the word or phrase is used requires a different definition." Tex. Gov't Code § 311.005(2). When presented with a similar situation, the Texas Supreme Court held that a legislative statement that an amendment did not make substantive changes to a law does not overcome the unambiguous language of a recodified statute that the legislature enacts, even if the language in the new statute does change the prior law. Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 283-84 (Tex. 1999). In reaching this decision, the Texas Supreme Court noted that if the general statement that none of the changes made during the recodification was allowed to overturn the current plain language in the statute, no citizen would be able to know what the current law was without combing through volumes of session laws. Id. at 284-85. That was deemed to be an unacceptable result. Id. at 285. Given the holding in Rylander, the only remaining question would be whether the current statutory language unambiguously includes corporations within the definition of person. As stated above, the Code's definition of person includes corporations unless the statute's text or context requires a different definition. Tex. Gov't Code § 311.005(2). The text of the statute does not require a deviation for the general definition because its wording does not refer exclusively to a natural person. Tex. Occ. Code § 251.003(a)(4).

This construction is supported by another subsection of the statute and a revisor's note. Following the definition of what constitutes practicing dentistry,

the statute specifically excludes a number of persons from that definition.[9] Tex. Occ. Code § 251.004(a). In this section, Dental Health Service Corporations incorporated under the Texas Non-Profit Corporation Act are specifically excluded. Id. § 251.004(a)(8).[10] If corporations were not "persons" under section 251.003(a), there would have been no reason for the legislature to specifically exclude these particular entities. Additionally, the section 251.003 revisor's note four comments that the previous version of section 251.003(a)(5) [Article 4551a section (5)] referred to a "person, firm, group, association, or corporation," but that was replaced with "person" because "under Section 311.005(2), Government Code (Code Construction Act), 'person' is defined to include a corporation or any other legal entity. That definition applies to the revised law." Tex. Occ. Code § 251.003(a) revisor's note 4 (for the 1999 revision of Article 4551a into the Occupations Code). OCA argues that the revisor's note is inapplicable because it refers to section 251.003(a)(5) (relating to dental appliance fitting etc.), not section 251.003(a)(4). This objection is misplaced, however, because "person" has the same meaning throughout section 251.003(a).

Since the plain language of the Code unambiguously includes corporations in its definition of "person," that language must be given effect even if the previous version of section 251.003(a)(4) did not apply to corporations.

III. Are the BSAs illegal?

Under Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur. Miller v. Long-Bell Lumber Co., 222 S.W.2d

---

[9] These exclusions were added in 2001, after the recodification.

[10] Section 251.004(a)(8) provides: "(a) A person does not practice dentistry as provided by Section 251.003 if the person is: . . . (8) a Dental Health Service Corporation chartered under Section A(1), Article 2.01, Texas Non-Profit Corporation Act (Article 1396-2.01, Vernon's Texas Civil Statutes); . . . ."

244, 246 (Tex. 1949). Contracts are presumptively legal, so the party challenging the contract carries the burden of proving illegality. Franklin v. Jackson, 847 S.W.2d 306, 310 (Tex. App.—El Paso 1992, writ denied). "When two constructions of a contract are possible, preference will be given to that which does not result in violation of law." Lewis v. Davis, 199 S.W.2d 146, 149 (Tex. 1947).

The bankruptcy court, relying on decisions from various federal district courts for the Northern, Eastern, and Western districts of Texas interpreting similar BSAs, granted partial summary judgment in favor of the Orthodontists and held that the BSAs were illegal under Texas Occupation Code § 251.003(a)(4) because, as written, they allowed OCA to practice dentistry without a license by owning, maintaining, or operating a place of business in which OCA engaged someone else in the practice of dentistry. See Penny v. OrthAlliance, Inc., 255 F. Supp. 2d 579, 581-83 (N.D. Tex. 2003); Becka v. Orthodontic Ctrs. of Am., Inc., No. 4:03-CV-80, slip op. at 6-11 (E.D. Tex. Mar. 31, 2005); Buck v. OrthAlliance, Inc., No. 3:05-CV-1485-N, slip op. at 4 (N.D. Tex. Nov. 20, 2006); Turner v. OCA, Inc., No. MO-05-CV-091, slip op. at 14 (W.D. Tex. Dec. 5, 2006).[11] OCA or its subsidiaries were the defendants in each of those cases, and OCA has not argued that the BSAs at issue in this case are materially different from those at issue in Penny, Becka, or Turner. A review of the record confirms that their terms are substantially similar.

OCA does not directly dispute that the terms of the BSAs enable it to practice dentistry under section 251.003(a)(4). Instead, it argues that the BSAs

---

[11] The opinion in Becka was later vacated upon the agreement of the parties. Packard v. OCA, Inc., No. 4:05-CV-273, slip op. at 8 (E.D. Tex. Feb. 23, 2007) (magistrate judge). Since the bankruptcy court ruled on January 17, 2007, two other Texas federal district courts have held that other very similar BSAs, which are not a part of this appeal, violated Texas law. Packard at 8-12; Orthodontic Ctrs. of Tex., Inc. v. Wetzel, No. 1-06-CA-626-LY, slip op. at 5-8 (W.D. Tex. Jul. 10, 2007);

do not run afoul of various regulations promulgated by the Texas State Board of Dental Examiners. This argument, however, is irrelevant, because the regulations cited by OCA were promulgated to define whether a "person" was "practicing dentistry" under section 251.003(a)(9), not section 251.003(a)(4), of the Code. See Tex. Occ. Code § 254.0011.[12]

By failing to argue why it believes that the bankruptcy court's holding that the BSAs violated section 251.003(a)(4) was erroneous, OCA has failed to raise an issue that would merit reversing the bankruptcy court's judgment. Furthermore, given the pervasiveness of the involvement in the practice of dentistry that the BSAs require OCA to engage in, the fact that every district court that has considered whether similar BSAs violate Texas law has held that they were void for illegality, and the longstanding tradition in Texas preventing

---

[12] Section 251.003(a)(9) provides that

"a person practices dentistry if the person: . . .

    (9) controls, influences, attempts to control or influence, or otherwise interferes with the exercise of a dentist's independent professional judgment regarding the diagnosis or treatment of a dental disease, disorder, or physical condition; . . . ."

Section 251.003(a)(9) is modified by § 251.003(b) which provides:

"(b) The practice of dentistry under Subsection (a)(9) does not:

    (1) require an entity to pay for services that are not provided for in an agreement; or

    (2) exempt a dentist who is a member of a hospital staff from following hospital bylaws, medical staff bylaws, or established policies approved by the governing board and the medical and dental staff of the hospital."

Section 254.0011 provides:

(a) The board may adopt rules relating to the practice of dentistry as described by Section 251.003(a)(9) to prohibit a dentist from engaging in contracts that allow a person who is not a dentist to influence or interfere with the exercise of the dentist's independent professional judgment.

(b) Rules adopted by the board under this subtitle may not preclude a dentist's right to contract with a management service organization. Rules affecting contracts for provision of management services apply the same to dentists contracting with management service organizations and to dentists otherwise contracting for management services.

unlicensed individuals or corporations (other than professional corporations in the relevant profession) from in substance owning a controlling equity interest in the practice of a licensed learned health professional, see, e.g., Garcia v. Texas Board of Medical Examiners, 384 F. Supp. 434, 437-440 (W.D. Tex. 1974); Flynn Bros. Inc. v. First Medical Associates, 715 S.W.2d 782, 784-85 (Tex. App.–Dallas 1986, writ ref'd n.r.e.), we hold that the bankruptcy court did not err.

IV.    Severance

OCA next argues that the bankruptcy court erred by holding that the BSAs were void for illegality because they contained severability and modification clauses, so the bankruptcy court should have severed or modified the illegal portions of the BSAs in order to cure any defects instead of voiding them for illegality. To support its argument, OCA cites a case in which this court held that an indemnity agreement was not void for illegality merely because one provision of the agreement was illegal. Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 721-22 (5th Cir. 1995). The Orthodontists respond by arguing that reformation is not applicable in this situation because the portion of the contract that is illegal is the main or essential purpose of the agreement, not merely an incidental promise. See Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978).

We first note that in the proceedings below, OCA did not raise this severability argument in its motion for partial summary judgment. It only raised this contention orally at the hearing to determine whether the BSAs were facially illegal, and at that time, OCA's position was that, if the bankruptcy court held that the BSAs were illegal, it should then hold an additional hearing, before certifying the issue for appeal, to consider whether provisions could be severed to cure the illegality. In response, the bankruptcy court stated that it would not hold a "reformation hearing until some higher court decides whether

they're illegal or not." OCA acquiesced to that decision, and never filed a motion to hold a reformation hearing. It is only on appeal that OCA argued that Texas law requires a court to consider severability before voiding a contract for illegality. However, this court generally does not consider arguments first raised on appeal. See Kinash v. Callahan, 129 F.3d 736, 739 n.10 (5th Cir. 1997).

Furthermore, while Texas law does allow a severability clause to save a contract that contains illegal provisions, the existence of a severability clause does not guarantee that a contract will always thus be saved from illegality. Williams makes it clear that severability is only appropriate when the illegal provision is not an essential part of the contract. 569 S.W.2d at 871. Even OCA's cited precedent acknowledges this limitation. Avenell, 66 F.3d at 722 ("'[W]here the subject matter of the contract is legal, but the contract contains an illegal provision . . . the illegal provision may be severed and the valid portion of the contract enforced.'" (quoting Panasonic Co. v. Zinn, 903 F.2d 1039, 1041 (5th Cir. 1990)) (emphasis added)). In this case, the illegal portions of the BSA are not simply incidental provisions.

As written, the BSAs create an interlocking set of obligations that required OCA to exercise considerable control over the Orthodontists' practices. For instance, OCA conducted the financial and marketing activity of the practices, and it maintained the facilities, equipment, and support personnel required to operate the practices. The BSAs also stipulated how much each Orthodontist was required to work, and greatly restricted their ability to perform services outside of the BSAs. In exchange for these services, OCA charged a fee that was tied to the profits of the practices. The BSAs provided little to no ability for the Orthodontists to oversee any of OCAs decisions related to their practice. Ultimately, the Orthodontists were essentially only left with control over diagnosing and treating their patients. Accordingly, the subject matter of the

agreement runs afoul of section 251.003(a)(4)'s prohibition of unlicensed persons from owning, operating, or maintaining a premises at which those persons also employ or engage another person to practice dentistry.

OCA has never attempted to identify any specific provisions of the BSAs that could be severed to make the BSAs compliant with section 251.003(a)(4). Instead, OCA repeatedly states that since the statute only prohibits both owning, operating, or maintaining a premise and engaging someone else in the practice of dentistry, this court could sever provisions so that OCA would only be performing one of these functions. Even if that might be possible (and we do not hold that it is), nevertheless OCA's failure to identify specific provisions of the BSAs to be severed, renders this court unable to determine whether such severance would cure the BSAs' illegality.

As a result, we decline to reverse the judgment of the bankruptcy court on the basis of OCA's argument that provisions of the BSAs could be severed to cure the illegality.

V.    Assignment

Finally, OCA contends that the bankruptcy court should not have held that the BSAs were void for illegality because the BSAs grant OCA the power to assign its obligations, without the consent of the Orthodontists, if the assignee is a controlled affiliate of OCA. The Orthodontists counter that OCA never raised this argument in the bankruptcy court, so it is waived.

A thorough review of the record confirms that OCA did not raise the issue of assignment in the bankruptcy court. At oral argument, OCA also admitted that it had not raised the assignment issue below. Since this issue was not properly presented to the bankruptcy court, it cannot be raised now for the first time on appeal. See Kinash, 129 F.3d at 739 n.10.

Additionally, it is unclear whether Texas corporate law would allow OCA to assign its obligations to one of its controlled affiliates in order to avoid the

requirements of section 251.003(a)(4). See Pan E. Exploration Co. v. Hufo Oils, 855 F.2d 1106, 1132-33 (5th Cir. 1988) (holding that Texas law permitted disregarding the corporate form because the corporation was established to circumvent a statute); see also Flynn Bros., Inc., 715 S.W.2d at 785 (holding that it was illegal to form a corporation to avoid the Texas Medical Practice Act's restrictions against unlicensed persons practicing medicine). Moreover, OCA has provided no legal basis to support its conclusion that since it could have assigned its obligations, the contracts are not void for illegality.

OCA cites an Illinois case in which a court rejected a claim that a contract was void for illegality because the contract had been assigned and the assignment cured the illegality. Heller Equity Capital Corp. v. Clem Envtl. Corp., 596 N.E.2d 1275, 1280 (Ill. App. 1992). Heller is distinguishable, however, because in that case the curing assignment had already occurred. Heller, 596 N.E.2d at 1280. Here OCA has not alleged that it has even attempted to have any of its obligations under the BSA actually assigned to one of its affiliates.[13]

OCA also cites Texas cases, which stand for the general proposition that a contract that could have been performed in a legal manner should not be voided because it was performed in an illegal manner. See Lewis, 199 S.W.2d at 149; Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc., 138 S.W.3d 915, 921 (Tex. App.—Dallas 2004, pet. struck). Lewis and Signal Peak are also not on point because both of those cases dealt with contracts that were not facially illegal, meaning there was a way for the parties to legally fulfill their obligations under the express terms of the contract. In this case, the bankruptcy court

---

[13] OCA has not attempted to make any assignments to cure the defects in the BSAs even though four separate federal district court judgments have voided similar BSAs for illegality under Texas law.

correctly held that the BSAs, as written, cannot be performed legally by the current parties.

Without knowing which obligations would be assigned to which affiliates, it is impossible for this court to determine whether the assigned BSA could be performed legally.  For this reason and because OCA failed to raise this argument below, we decline to reverse the judgment of the bankruptcy court on this ground.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is

AFFIRMED.