Robert C. PENNY, et al., Plaintiffs,

v.

ORTHALLIANCE, INC., Defendant.

No. CIV.A.3:01–CV–1569–N.

United States District Court,
N.D. Texas,
Dallas Division.

March 27, 2003.

David Bryant, Diamond McCarthy Taylor Finley Bryant & Lee, Dallas, TX, Roger B Cowie, Lead Attorney, Thomas Allan Connop, Locke Liddell & Sapp, Dallas, TX, for Robert C. Penny.

Amy M Winters, Joseph J Lowenthal, Jr, Mark A Cunningham, Stewart E Niles, Jr, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, James P Karen, Lead Attorney, Tamara Marinkovic, Jones Day, Dallas, TX, Michael J McConnell, Jones Day, Atlanta, GA, for Orthalliance, Inc.

## MEMORANDUM OPINION AND ORDER

GODBEY, District Judge.

Before the Court is Plaintiffs' amended motion for partial summary judgment filed on December 14, 2001. For the reasons stated below, Plaintiffs' motion is GRANTED.

### I. BACKGROUND

Robert C. Penny ("Penny"), Keith Stewart ("Stewart"), and William M. Reeves ("Reeves") (the "Individual Plaintiffs") are doctors of dental surgery, specializing in the practice of orthodontics; the Individual Plaintiffs are all licensed to practice dentistry in Texas. The Defendant, Orthalliance, Inc. ("Orthalliance"), provides business and consulting services to orthodontic entities. The Plaintiffs Penny Orthodontics, P.C. ("Penny P.C."), Stewart Orthodontics, P.C. ("Stewart P.C."), William M. Reeves, P.C. ("Reeves P.C.") (collectively "Practice Groups" or "Groups"), the Individual Plaintiffs, and Orthalliance [1] entered into a series of agreements in which Orthalliance acquired the physical assets of

---

1. Penny and Stewart entered into their agreements with Premier Orthodontic Group, Inc. ("Premier"). In 1997, Orthalliance merged with Premier and assumed all of the rights and obligations of Premier under the contracts with the Plaintiffs. Accordingly, Premier shall be referred to as Orthalliance for the remainder of this opinion.

the Individual Plaintiffs' orthodontic practices and agreed to provide practice management services. In return, the Individual Plaintiffs received a substantial amount of money and agreed to remain working at their practices for at least five years and to not compete with Orthalliance following the termination of the Parties' agreements. The Plaintiffs claim that Orthalliance failed to perform its obligations under the agreements and now bring this action seeking various forms of relief including a declaration regarding the invalidity of the Parties' agreements as constituting the unauthorized practice of dentistry.

Although some differences exist among the transactions entered into by the Parties, each involve certain core contracts: (1) a "Purchase and Sale Agreement" between Orthalliance and each Individual Plaintiff or their respective formerly owned corporation; (2) a "Service Agreement" between Orthalliance and the respective Practice Group; and (3) an "Employment Agreement" between the Individual Plaintiff and his Practice Group (collectively "Agreements"). Under the Purchase and Sale Agreement, Reeves sold to Orthalliance his leasehold interests in the offices he maintained, his equipment, tools, furniture, furnishings, fixtures, inventory, supplies, technology, files, records (other than patient records), patient lists, supplier lists and all other personal property located at his orthodontic offices. Penny and Stewart executed similar Purchase and Sale Agreements[2] with Orthalliance, the outcome of which invested Orthalliance with title to all of the tangible assets of each orthodontic practice; in these contracts, the former professional corporations of Penny and Stewart—Robert C. Penny,

D.D.S., M.S., Inc. and Keith J. Stewart, D.D.S., P.C.—were merged into Orthalliance. The Individual Plaintiffs then created new professional corporations, the Practice Groups, through which they conducted aspects of their orthodontic practices.

The Service Agreements executed between the Practice Groups and Orthalliance are all substantially alike. Orthalliance contracted to provide the Practice Groups with comprehensive practice management, financial and marketing services, and such facilities, equipment, and support personnel as reasonably required by the Practice Groups to operate. Orthalliance assumed all power and authority reasonably necessary to manage the business affairs of the orthodontic offices, but disclaimed control over decisions relating to patient treatment. Orthalliance further agreed to employ the Practice Groups' non-professional staff and provide the Groups with various services, including payroll, business systems and procedures, purchasing, information systems, legal services, marketing, and planning. Orthalliance charged a fee for its services that was tied to a percentage of the Practice Groups' adjusted gross revenue.

Under the Service Agreements, Orthalliance controls the Practice Groups' accounts receivable and deposits the proceeds from the accounts into bank accounts in the Groups' various names, over which Orthalliance exercises sole control. From the Groups' bank account, Orthalliance first deducts its service fee, then deducts "Center Expenses"; these Expenses include salaries and benefits of the Orthalliance staff at the Practice Groups' offices, the direct

---

**2.** The Purchase and Sale Agreements entered into by Penny and Stewart are entitled Agreement and Plan of Reorganization. For the purposes of this Opinion, the differing titles of the contracts are unimportant, and Penny's and Stewart's contracts will be referred to as Purchase and Sale Agreements.

costs of Orthalliance's other employees who provide services to the Practice Groups, the rent for the orthodontic offices, personal property taxes on the tangible assets owned by Orthalliance and used by the Practice Groups, depreciation on those assets, and other expenses incurred by Orthalliance. After Orthalliance pays the Center Expenses, it remits the remainder of the accounts receivable proceeds to the Practice Group.

The Service Agreements also contain a covenant not to compete ("Non–Compete"). The Non–Compete prohibits the Practice Groups from opening any additional offices within a ten mile radius of their existing locations without the consent of Orthalliance and from advertising or soliciting patients, staff or referrals for a period of two years after the termination of the Service Agreements. The Service Agreements further obligate the Practice Groups to enter into Employment Agreements with the Individual Plaintiffs. The Employment Agreements, to which Orthalliance is a stated third-party beneficiary of some provisions, require the Individual Plaintiffs to work for their respective Groups at Orthalliance's newly acquired offices for an initial term of five years and contain restrictive covenants similar to those found in the Service Agreements.

## II. THE INTERRELATIONSHIP OF THE AGREEMENTS IMPERMISSIBLY ALLOWS ORTHALLIANCE TO PRACTICE DENTISTRY

The threshold issue before the Court is whether the Parties' Agreements are illegal, and therefore invalid, because their interrelationship allows Orthalliance to practice dentistry without a license in violation of the Texas Dental Practices Act, TEX. OCC. CODE ANN. §§ 251.001, *et. seq.* ("TDPA" or the "Act"). A person may not practice dentistry, under the TDPA, without a valid license issued by the Texas State Board of Dental Examin-

ers. TEX. OCC. CODE ANN. § 256.001 (Vernon Supp.2003). Section 251.003 of the TDPA sets forth several categories of activities that constitute the practice of dentistry under the Act. A person practices dentistry if, among other things, he or she "owns, maintains, or operates an office or place of business in which the person employs or engages under any type of contract another person or persons to practice dentistry ...." *Id.* § 251.003(a)(4).

The Court has been unable to find legislative history, case law, or attorney general opinions construing section 251.003(a)(4) of the TDPA. The Court, therefore, will apply the rules of statutory construction to interpret the language of this provision. In construing a statute, a court tries to determine and give effect to the legislature's intent. *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). A court looks first to the "plain and common meaning of the statute's words." *Id.* (internal citations omitted). If a statute's meaning is unambiguous, a court will generally interpret the statute according to its plain meaning. *Id.* With respect to the issue presented in this case, sections 251.003(a)(4) and 256.001 of the TDPA are unambiguous.

A person without a valid license issued by the Texas Board of Dental Examiners cannot own, maintain, or operate an office in which the person employs under any type of contract another person to practice dentistry. The language of the TDPA is clear and broad. "Owns, maintains, or operates" are well defined and commonly understood terms, and the legislature's use of the disjunctive "or" signifies that engaging in any of the three actions violates the provision. Further, the unambiguous language of the statute prohibits a dentist's employment or engagement under *any* type of contract at an office owned, maintained, or operated by non-licensed per-

sons. The Court finds the use of the word "any" to be significant. *See G.M. Trading Corp. v. Commissioner*, 121 F.3d 977, 981 (5th Cir.1997) (relying on the broad scope of the plain meaning of "any"). The legislature's deliberate wording of the TDPA indicates its intent to broadly prohibit a dentist's employment or engagement by a non-licensed person. The Court, therefore, shall interpret the relevant provisions of the Act in accordance with the intent of the legislature.

The Court finds, in interpreting the plain language of the TDPA, that the Agreements are violative of sections 251.003(a)(4) and 256.001 of the Act and, therefore, are illegal because: (1) the Purchase and Sale Agreements transfer title in all of the tangible assets of the orthodontic offices to Orthalliance, thus transferring ownership of the offices to Orthalliance; (2) the Service Agreements obligate Orthalliance to operate and maintain the orthodontic offices; and (3) the Employment Agreements require that the Individual Plaintiffs remain employed at Orthalliance's offices for a term of years, therefore Orthalliance employs or engages the Individual Plaintiffs. The interrelationship of the Agreements thus permits Orthalliance to own, operate, and maintain the offices in which it employs or engages the Individual Plaintiffs to practice dentistry.

First, Orthalliance owns the orthodontic offices or leaseholds as shown by the Purchase and Sale Agreements. An "office" is "a place in which business, clerical, or professional activities are conducted." THE AMERICAN HERITAGE DICTIONARY OF THE AMERICAN LANGUAGE (4th ed.2000). Here, the orthodontic offices are the places where the Individual Plaintiffs conduct their professional activities. The Purchase and Sale Agreements invest Orthalliance with title to all of the offices' tangible assets. "To own" is defined as "to have or possess as property" or "to have control over." *Id.* By virtue of possessing the title to the offices' assets and controlling these assets in accordance with the Service Agreements, Orthalliance owns the orthodontic offices.[3]

Next, Orthalliance operates and maintains the orthodontic offices pursuant to the Service Agreements. "To operate" is defined as "to control the functioning of; run" or "to conduct the affairs of; manage."[4] *Id.* In the Service Agreements, Orthalliance contracted to provide the Practice Groups with comprehensive practice management. As part of this comprehensive management, Orthalliance controls the functioning of, runs, conducts the affairs of, and manages the orthodontic offices. Orthalliance assumes all power and authority necessary to manage the business affairs of the orthodontic offices. Orthalliance employs the offices' non-professional staff and provides the Plaintiffs with comprehensive services, including payroll, business systems and procedures, purchasing, information systems, legal services, marketing, and planning. Orthalliance controls the Practice Groups' accounts receivable and deposits the proceeds into a bank account in the Groups' name, over which Orthalliance exercises sole control. Indeed, the express purpose of the Service Agreements is to allow Orthalliance to con-

---

**3.** In this context, the Court finds that Orthalliance's ownership of the offices' leaseholds and tangible assets is sufficient to show that Orthalliance owned the orthodontic offices. The Court does not understand "own" as used in the statutory context to require fee simple ownership of the office real property and structure.

**4.** This definition of operate reflects the transitive form of the verb. The selection of the transitive form is consistent with the language of the section 251.003(a)(4) because "operates an office" requires the direct object "office" to complete the meaning of the verb.

trol the functioning of or to manage the orthodontic offices.

Further, the Service Agreements require that Orthalliance maintain the orthodontic offices. "To maintain" is "to keep up or carry on; continue." *Id.* All of the obligations assumed in the Service Agreements by Orthalliance not only require Orthalliance to operate the orthodontic offices on a day to day basis, but also to maintain the offices. The term of the Service Agreements is for twenty or twenty-five years, therefore Orthalliance must keep up or continue its services for an extended period of time. Accordingly, Orthalliance must maintain the orthodontic offices pursuant to the Service Agreements.

Lastly, Orthalliance employs or engages the Individual Plaintiffs to practice dentistry at the orthodontic offices which it owns, operates, and maintains. The Individual Plaintiffs practice orthodontics, a dental specialty, at Orthalliance's offices. The Employment Agreements, executed between the Individual Plaintiffs and their respective Practice Groups, require the Individual Plaintiffs to remain employed at Orthalliance's offices for an initial term of five years. In the Service Agreements, Orthalliance requires that the Practice Groups enter into the Employment Agreements · with the Individual Plaintiffs. Thus, Orthalliance employs or engages the Individual Plaintiffs by virtue of the Parties' contractual scheme.

The Parties seek to accomplish in a trilateral contract that which they cannot in a bilateral contract, an express written employment contract. However, the TDPA was written explicitly to sweep more broadly than a direct employment relationship: "employs or engages under any type of contract . . . ." "To engage" is defined as "to obtain or contract for the services of." THE AMERICAN HERITAGE DICTIONARY OF THE AMERICAN LANGUAGE (4th ed.2000). Thus, the Act was expressly phrased to prevent parties from circumventing the prohibitions on the corporate practice of dentistry through indirect business relationships.

The Agreements, when construed together, result in Orthalliance engaging or obtaining the services of the Individual Plaintiffs.[5] *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000) (single transaction encompassing multiple written agreements may be construed together as one contract). Thus, the Agreements contravene the TDPA. *See Flynn Bros., Inc. v. First Med. Assocs.,* 715 S.W.2d 782, 785 (Tex.App.— Dallas 1986, writ ref'd n.r.e.) (holding the design, effect, and purpose of the parties' whole contractual scheme was developed to do indirectly that which they could not do directly under the Medical Practices Act). The Court, therefore, declares the Agreements illegal in their entirety. *See Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.—Dallas 1986, no writ) (holding entire agreement invalid when the illegal provisions could not be severed from the legal provision because the legal and illegal activities were so commingled). Plaintiffs' amended motion for summary judgment is therefore GRANTED.

---

**5.** Under the facts of this case, Orthalliance may also employ the Individual Plaintiffs; however, the Court shall not decide this issue, because Orthalliance clearly engages the Individual Plaintiffs.