**AMERICAN ACADEMY OF EMERGENCY MEDICINE,**
Appellant,

v.

**MEMORIAL HERMANN HEALTH-CARE SYSTEM, INC., Team Health, Inc., and ACS Primary Care Physicians-southwest, P.A., Appellees.**

No. 01–08–00096–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 2009.

mann Healthcare System, Inc., Team-Health, Inc., and ACS Primary Care Physicians–Southwest, P.A., in AAEM's suit for declaratory judgment. In its sole issue, AAEM contends that the trial court erred in granting appellees' pleas and dismissing its claims for lack of subject matter jurisdiction.

We affirm.

Jamie Russell Bures, Mel Smith, Mel Smith & Associates, P.C., Houston, TX, for Appellant.

Chad W. Dunn, K. Scott Brazil, Brazil & Dunn, Clifford Bowie Husted, James M. Kimbell, Kelly Delz Herrera, Strasburger & Price. L.L.P., Jamie A. Farrar, Robert J. Swift, Fulbright & Jaworski, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

TERRY JENNINGS, Justice.

Appellant, American Academy of Emergency Medicine ("AAEM"), challenges the trial court's order granting the pleas to the jurisdiction of appellees, Memorial Her-

## Factual and Procedural Background

AAEM is a non-profit corporation "formed to promote greater professionalism in emergency medicine" with a "national membership of approximately 5,000 emergency physicians," many of whom "practice emergency medicine in the State of Texas." In this suit,[1] AAEM alleges that appellees are engaging in a business practice that violates Texas laws prohibiting the corporate practice of medicine, including laws prohibiting "non-licensed persons or entities from practicing medicine, employing physicians, assisting in the unlicensed practice of medicine, ... sharing of professional fees with physicians," and "restraining trade in the emergency medicine profession."[2] AAEM asserts that it has a

---

1. AAEM filed suit jointly with Humble Emergency Physicians, P.A. ("HEPPA"). The trial court severed AAEM's claims into a separate cause of action, and HEPPA is not a party to this appeal.

2. AAEM asserts that appellees violated, among other statutes, specific provisions of the Texas Occupations Code. *See* TEX. OCC. CODE ANN. § 164.051(a)(1) (Vernon 2004) (stating that Texas Medical Board "may refuse to admit a person to its examination or refuse to issue a license to practice medicine and may take disciplinary action against a person if the person: (1) commits an act prohibited under Section 164.052"); *Id.* § 164.052(a)(5), (a)(17) (Vernon 2004) (stating that "physician or an applicant for a license to practice medicine commits a prohibited practice if that person: (5) commits unprofessional or dishonorable conduct that

is likely to deceive or defraud the public, as provided by Section 164.053, or injure the public; ... (17) directly or indirectly aids or abets the practice of medicine by a person, partnership, association, or corporation that is not licensed to practice medicine by the board"); *Id.* § 164.053(a)(9) (Vernon 2004) (stating that "[f]or purposes of Section 164.052(a)(5), unprofessional or dishonorable conduct likely to deceive or defraud the public includes conduct in which a physician: (9) delegates professional medical responsibility or acts to a person if the delegating physician knows or has reason to know that the person is not qualified by training, experience, or licensure to perform the responsibility or acts"); *Id.* § 165.156 (Vernon 2004) (stating, in section entitled "Misrepresentation Regarding Entitlement to Practice Medicine," that "[a] person, partnership, trust, association, or corporation commits an offense if the

"direct interest in the outcome of the proceeding in that [it] represent[s] many practicing physicians in Texas and the nation with professional interest in the enforcement" of Texas laws prohibiting the corporate practice of medicine as well as an interest in the "use of non-competition and non-solicitation agreements for emergency physicians" in Texas.

In its petition, AAEM generally complains of two alleged agreements that, according to AAEM, violated the prohibitions against the corporate practice of medicine. First, AAEM complains of an agreement between TeamHealth and Memorial that allegedly provided that Memorial would pay TeamHealth for services provided by physicians and TeamHealth would have "the exclusive right to hire, terminate, manage, employ independently, contract or otherwise control the practice of physicians at [a number of] Memorial hospitals."[3] Second, AAEM complains of "independent contractor agreements" between ACS and unidentified physicians. AAEM alleges that TeamHealth "illegally employs" physicians under the terms of these agreements, which AAEM characterizes as "disguised employment agreements designed to circumvent Texas law and Federal tax law." AAEM asserts that TeamHealth uses its alter ego, ACS, to execute the independent contractor agreements with unidentified physicians and that ACS is "a shell that allows TeamHealth to illegally employ physicians [and] acquire and hold emergency services and

physician contracts, such as those of Plaintiffs and to split professional fees of physicians." AAEM alleges that, under these illegal agreements, the physicians are "required to assign their right to receive the monies they earn." Finally, AAEM complains that the agreements contain "restrictive covenants" that illegally restrain the physicians who signed them from working at certain locations and for certain time periods upon their termination. AAEM asserts that these "restrictive covenants" are invalid under Texas law.

AAEM attached to its petition a copy of a document entitled "Physician Independent Contractor Agreement," which states that it is made between ACS and an unidentified "Physician." The agreement is not executed by any party and does not name a particular physician, but rather is only a form agreement. Similarly, in the attached exhibits to this document, the space for identifying the independent contractor merely states "NAME & ADDRESS." Even AAEM describes this agreement as one between "ACS and the *prospective* doctor." (Emphasis added).

AAEM seeks the following declarations:

1. The bidding process utilized by Memorial was a violation of Texas law because it solicited and accepted illegal bids from entities violating the corporate practice of medicine prohibitions under Texas law;

2. The financial arrangements between TeamHealth and Memorial violate the corporate practice of medicine

person, partnership, trust, association, or corporation, through the use of any letters, words, or terms affixed on stationery or on advertisements, or in any other manner, indicates that the person, partnership, trust, association, or corporation is entitled to practice medicine if the person, partnership, trust, association, or corporation is not licensed to do so").

3. AAEM referred to an "emergency services agreement embodied in a letter of understanding between Memorial and TeamHealth." The record does not contain a copy of any such agreement, or any other agreement between Memorial and TeamHealth, but it is undisputed that neither AAEM nor its individual physician members are signatories to any agreement between Memorial and TeamHealth.

by allowing fee splitting with an unlicensed corporation;

3. The contract or understandings between Memorial and TeamHealth as to the provision of medical practitioners at Memorial are void as they violate the corporate practice of medicine prohibition under Texas law;

4. A declaration that Defendants purchase medical groups, employing physicians or holding emergency services contracts in the State of Texas is a violation of the corporate practice of medicine and such purchases, agreements, understandings or assignments should be declared void as a matter of law;

5. A declaration that the use of restrict[ive] covenants in the purported independent contract agreements unfairly limits competition, reduces the availability of otherwise qualified physicians to practice in Harris County, Texas and forces physicians who are subject to such agreements to continue working for an organization in the face of violations of standard medical procedure;

6. A declaration that TeamHealth is not legally allowed to conduct business in the State of Texas, and as such, its contract with Memorial should be declared void.[4]

In their plea to the jurisdiction, TeamHealth and ACS argued, among other things, that AAEM has no standing to bring claims for declaratory judgment and there is no justiciable controversy because there is "no contract between" the parties. In support of their standing and justiciability arguments, TeamHealth and ACS asserted that although AAEM is seeking declarations that certain contracts violate the prohibitions against the corporate practice of medicine, AAEM is not a party to the contracts, has not suffered a distinct injury, and no real controversy exists between the parties. In its plea to the jurisdiction, Memorial similarly asserted that AAEM lacks standing and there is no justifiable controversy.[5]

In its response to appellees' pleas, AAEM asserted that it has associational standing to bring suit. First, it asserted that "each of AAEM's Harris County members could sue in their own right if they choose but [that] by doing so, they would risk summary termination and enforcement of a one-year non-compete" agreement. AAEM further asserted that "[s]ome of AAEM's members are working for Memorial under the Memorial–TeamHealth arrangement now and certainly have an interest in whether that arrangement is legal under Texas law or violative of their personal obligations under Texas law." Second, AAEM asserted that its "interest in the case is established by its

4. Some of the declarations sought below relate more specifically to the claims brought by HEPPA, which were severed into a separate action. In its petition, HEPPA specifically complained of the bidding process conducted by Memorial for staffing services at its emergency departments, which the parties represent was the bidding process that TeamHealth ultimately won. HEPPA brought numerous business tort claims related to this bidding process. Because HEPPA's claims were severed into a separate action, we do not consider any of HEPPA's claims. In its reply brief, AAEM concedes that some of the declarations

relate to the relief sought by members of HEPPA as members of AAEM.

5. In post-submission briefing, Memorial asserts that "the only allegations of harm proffered in [AAEM's] petition and supporting evidence are hypothetical and speculative scenarios" and that neither AAEM nor its members can "demonstrate a likelihood of enforcement of criminal penalties related to the corporate practice of medicine or a realistic danger to their licensure and practice."

mission and vision statement," which includes its statements that the "role of emergency medicine management companies should be to help physicians manage their practice," "the practice should be owned by and controlled by the physicians and not by a management company," and "the practice of emergency medicine is best conducted by a specialist in emergency medicine." Third, AAEM argued that it was not necessary for its individual members to participate in the case because the trial court's "determination of the legality of the Memorial/TeamHealth arrangement will apply to all members of the medical profession practicing emergency medicine." In sum, AAEM argued that, although it had not entered into a written contract with appellees, "by representing emergency department physicians directly affected by the ruling sought," it had standing.

In support of its response, AAEM filed an affidavit of Dr. Robert McNamara, "Past Presidents Council Representative to [AAEM]," in which McNamara testified that "AAEM has over 5,000 members, some of which practice emergency medicine in Houston, Harris County, Texas" and that "[s]ome of its members are currently on staff at the subject Memorial emergency departments." McNamara described AAEM's principles and positions, stating that AAEM is concerned with the use of lay persons in the medical decision process and that it "believes that Texas law prohibits such individuals from practicing medicine without a license." McNamara further testified that AAEM had "joined this suit to protect its members in Harris County, Texas," it believed there were "legal ramifications threatening the licensure" of physicians, and it concluded that the challenged practices were "not in the best interest" of the patients in emergency departments. McNamara also stated that AAEM is concerned with the use

of covenants-not-to-compete in the independent contractor agreements, asserting that such covenants restrict competition, disrupt continuity of care, "potentially disrupt the public of medical services," and violate "sound medical practices and medical ethics." McNamara explained that AAEM sought to have this practice discontinued on behalf of its members. Finally, McNamara testified that although AAEM's individual members could have brought the suit, doing so would have jeopardized their career and subjected them to economic sanctions and "professional pressures."

In their replies, appellees asserted that AAEM had failed to remedy the jurisdictional defects. Appellees argued, among other things, that because AAEM had not shown that any of its members were parties to the contracts at issue, AAEM had failed to affirmatively demonstrate that any of its members had standing to sue in their own right, and, thus, any claim for associational standing failed.

The trial court granted appellees' pleas to the jurisdiction and dismissed AAEM's claims.

## Standard of Review

A plea to the jurisdiction seeks dismissal of a case for lack of subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). When reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the plaintiff. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that we review de novo. *See Tex. Dep't of Parks & Wild-*

*life*, 133 S.W.3d at 226. "Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.* "If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id.* at 227. "If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction." *Id.* at 227–28.

### Associational Standing

In its sole issue, AAEM argues that the trial court erred in granting appellees' pleas and dismissing its claims for lack of subject matter jurisdiction because AAEM's individual members could have sued in their own right, the interests of AAEM were germane to its purposes, the members of AAEM did not have to be parties to the suit as AAEM was not seeking damages, and the relief sought by AAEM would benefit its members without their participation. The parties agree that the central issue presented in this appeal is whether AAEM has associational standing to bring suit.[6]

 "The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (citation omitted). Additionally, an association claiming associational standing to bring suit must show that: (1) its members have

standing to sue on their own behalf, (2) the interests the organization seeks to protect are germane to the organization's purpose, and (3) neither the claim nor the relief requested requires the participation of individual members in the lawsuit. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex.2007); *Tex. Ass'n of Bus.*, 852 S.W.2d at 447–48; *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 561 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). All parties agree that AAEM meets the second requirement for associational standing. Thus, we focus on the first and third requirements in determining whether AAEM has associational standing.

As a preliminary matter, we note that AAEM seeks declarations that can be divided between those related to the alleged contract between TeamHealth and Memorial governing TeamHealth's operations at Memorial's hospitals and those related to the independent contractor agreements identifying the potential contracting parties as ACS and unidentified, prospective physicians. We address the requested declarations related to the independent contractor agreements separately from the requested declarations related to the alleged TeamHealth and Memorial contract because each category of declarations more clearly fails a different requirement for associational standing. We then address AAEM's claims for declarations regarding the restrictive covenants in the independent contractor agreements to the extent that those claims are not resolved by our other holdings.

 To meet the first requirement of associational standing, AAEM must show

---

**6.** It is undisputed that AAEM is not a party to any of the challenged contracts, and AAEM is not arguing that it possesses standing individ-

ually to seek the declaratory relief it has requested.

that its members have standing to sue in their own right. *S. Tex. Water Auth.*, 223 S.W.3d at 308. This requirement "should not be interpreted to impose unreasonable obstacles to associational representation," and the purpose of this requirement "is simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation." *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (citations omitted).

In regard to AAEM's claims for declarations related to the alleged contract between Memorial and TeamHealth, AAEM has made no argument explaining how its individual members would have standing to seek declaratory relief on this contract. Although this contract is not contained in the record, it is undisputed that neither AAEM nor its member physicians are parties to this contract. It is also undisputed that AAEM does not represent any of the parties to the contract. The membership of AAEM, according to AAEM's own allegations and evidence, is limited to emergency physicians, and AAEM's alleged "direct interest" in the case arises from the physician members' alleged "professional interest." Moreover, even assuming that AAEM has alleged, or that the record contains evidence demonstrating, that AAEM member physicians

may be engaging in the corporate practice of medicine at Memorial hospitals, there is nothing in the record to suggest that these physicians are doing so pursuant to the Memorial TeamHealth contract.[7] For example, there is no evidence, or even allegation, that the individual AAEM member physicians are identified in the Memorial TeamHealth contract or that the Memorial TeamHealth contract requires the employment of specific physicians, including those who are AAEM members. There is also no evidence, or allegation, that the physicians practicing at the Memorial hospitals are bound to or governed by the Memorial TeamHealth contract in any way. Rather, to the extent that AAEM has even alleged or that the record contains evidence demonstrating that AAEM member physicians may be engaging in the corporate practice of medicine at Memorial hospitals, it is clear that they must be doing so pursuant to the independent contractor agreements.

Additionally, to the extent that the record before us even establishes the existence of a real controversy involving AAEM member physicians,[8] we conclude that the question of whether AAEM's member physicians are engaging in the corporate practice of medicine at Memorial hospitals would not be resolved by judicial declarations related to any contract between Memorial and TeamHealth. *See id.*

---

7. As noted by Memorial in its post-submission briefing, AAEM has not demonstrated that "its individual members' medical licenses are 'subject to' the terms of the contract between [Memorial] and TeamHealth or that their licenses or livelihood could even be at risk or affected by the terms" of the alleged contract between Memorial and TeamHealth. Moreover, AAEM has not alleged that any contract between Memorial and TeamHealth "contains provisions that would subject AAEM's individual members (as opposed to [Memorial and TeamHealth]) to sanction or prosecution for violating the prohibition against the corporate practice of medicine."

8. For example, a real controversy might be demonstrated by evidence that AAEM member physicians are facing threats to their licensing by practicing medicine at Memorial's hospitals pursuant to the challenged contracts. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447–48 (Tex. 1993) (concluding that Texas Association of Business met first requirement of associational standing by showing that its members had been assessed administrative penalties under challenged enactments and by alleging that its members remained "at substantial risk of penalty").

at 446 (reciting general test of standing as including requirement that controversy "will be actually determined by the judicial declaration sought") (citations omitted). Thus, we hold that AAEM's allegations, as well as the evidence in the record, affirmatively demonstrate that AAEM's member physicians would not have individual standing to seek declaratory relief regarding the alleged contract between Memorial and TeamHealth. Accordingly, we further hold that AAEM lacks associational standing to pursue its declaratory claims related to this alleged contract. *See S. Tex. Water Auth.*, 223 S.W.3d at 308 (concluding that no member of association had demonstrated individual standing to contest contract and, thus, association lacked standing to sue on behalf of its members).[9]

We now turn to AAEM's claims for declarations related to the independent contractor agreements. To meet the third requirement of associational standing, AAEM's pleadings and the record must demonstrate that "neither the nature of the claim asserted nor the relief sought requires the participation of the individual members in the lawsuit." 223 S.W.3d at 308. If an association seeks damages on behalf of its members

"or must otherwise prove the members' individual circumstances to obtain relief, participation of the individual members is required, and the third prong is not satisfied." *Tex. Mun. League Intergovernmental Risk Pool v. Burns*, 209 S.W.3d 806, 815 (Tex.App.-Fort Worth 2006, no pet.). In contrast, an association that "seeks only prospective relief, raises only issues of law, and need not prove the individual circumstances of its members to obtain that relief" satisfies the third requirement for associational standing. *Tex. Ass'n of Bus.*, 852 S.W.2d at 447–48.

In regard to AAEM's claims for declarations related to the independent contractor agreements, AAEM asserts that some of its member physicians are on staff at Memorial emergency departments and that, in order to work at these departments, physicians are required to enter into independent contractor agreements. AAEM also cites Dr. McNamara's testimony that AAEM member physicians are on staff at Memorial emergency departments and that AAEM brought suit because it believed there were "legal ramifications" to AAEM's physicians, and physicians generally, for "participation in the corporate practice of medicine." AAEM also asserts that its individual member physicians did

---

9. In support of its argument that a physician could, in his own right, "clearly" sue to have "a practice that was violative of sound medical practice and ethics" declared illegal and void, AAEM relies on *Penny v. Orthalliance, Inc.*, 255 F.Supp.2d 579 (N.D.Tex.2003). AAEM reasons that an organization with members "affected by contractual arrangements" should also be entitled to bring suit on the members' behalf. However, the situation addressed in *Penny* is substantially different than that addressed in the instant case. In *Penny*, individual dentists brought suit against Orthalliance, a provider of business and consulting services to orthodontic entities, because Orthalliance had failed to perform its obligations under a series of agreements actually executed by the parties and third party practice groups. *Id.* at 579–80. The individual dentists brought suit seeking declarations that the parties' agreements constituted the unauthorized practice of dentistry, and the individual dentists presented the court with specific contracts that they had entered into and operated under with Orthalliance. *Id.* *Penny* did not involve claims brought by an association seeking to represent the interests of members through obtaining declarations related to form contracts that identified only prospective parties. *See id.* Moreover, although the individual dentists in *Penny* sought declarations regarding a series of agreements including some agreements between Orthalliance and practice groups to which they were not parties, the record contained evidence that the individual dentists were identified by name in these contracts. *Id.*

not file suit because, by doing so, they would face substantial risk to their professional careers and livelihoods.

 As AAEM states in its appellate briefing, the "central question" in this suit is whether physicians, including its member physicians, are engaging in the corporate practice of medicine in violation of Texas laws by practicing at Memorial hospitals under some version of an independent contractor agreement, which AAEM asserts is nothing more than a disguised employee agreement. We conclude that AAEM's claims for declaratory relief on whether its physicians are violating Texas law by practicing at Memorial hospitals under some version of an independent contractor agreement, alleged to be similar to the form agreement attached to AAEM's petition, do not present pure issues of law, but instead require individualized inquiry and fact-intensive analysis. *See Tex. Soc'y of Prof'l Eng'rs v. Tex. Bd. of Architectural Exam'rs,* No. 03–08–00288–CV, 2008 WL 4682446, at *4 (Tex.App.-Austin Oct.24, 2008, no pet.).

We recognize that AAEM has pleaded for declaratory relief, which may sometimes present pure questions of law that do not require the participation of an association's individual members. *See Tex. State Bd. of Podiatric Med. Examiners v. Tex. Orthopaedic Ass'n,* No. 03–04–00253–CV, 2004 WL 2556917, at *3 (Tex.App.-Austin Nov.12, 2004, no pet.) (concluding that association seeking declaration to invalidate rule adopted by state board defining foot as including part of ankle met third prong of standing requirement because declaration sought by association presented "question of law that [did] not require the participation of individual members" and "relief sought [was] a declaratory ruling that would be uniformly applied to physicians and podiatrists"). Here, however, based upon the type of declarations AAEM is seeking, it will be necessary for a trial court to review the particular conduct of the individual member physicians as well as the particular contracts entered into by the individual member physicians to determine if the physicians or TeamHealth, through its alleged alter ego ACS, are violating the prohibitions against the corporate practice of medicine by entering into and conducting themselves under the independent contractor agreements. *See id.*

In this case, AAEM seeks declarations related to a form contract that has not been executed by any party. Even AAEM characterizes these independent contractor agreements as agreements between ACS and *prospective* physicians. Without evidence as to the terms of the agreements actually entered into by the AAEM member physicians and the conduct of the parties under the challenged agreements, a trial court would not be able to resolve the issues and to make declarations like those sought by AAEM. In sum, we conclude that in order for AAEM to obtain declaratory relief as to whether or not its individual physician members are engaging in the corporate practice of medicine while practicing at Memorial hospitals, it would be necessary for AAEM to provide evidence on the individual circumstances of its members. *See id.* Accordingly, we hold that AAEM lacks associational standing to pursue its declaratory claims related to the independent contractor agreements.

Finally, to the extent the above holdings do not resolve the entire issues raised herein, we address AAEM's claims for declarations related to the restrictive covenants contained in the form, non-executed independent contractor agreements. Here, AAEM has neither made any allegation nor presented any evidence demonstrating that a real controversy exists in regard to these complained-of covenants. For example, AAEM has not made any allegation that appellees have sought to

enforce a restrictive covenant contained in an agreement between ACS and AAEM member physicians. AAEM only generally alleges that the use of restrictive covenants is invalid under Texas law. The only evidence contained in the record even remotely related to the existence of a real controversy between the parties is McNamara's vague testimony about possible "legal ramifications threatening the licensure" of individual physicians, but this testimony was not tied to the restrictive covenants. We conclude that the pleadings and the record affirmatively demonstrate the lack of a real controversy in this regard. Accordingly, we hold that AAEM lacks associational standing to bring claims for declarations related to these restrictive covenants.

We overrule AAEM's sole issue.

### Conclusion

We affirm the order of the trial court dismissing AAEM's claims for lack of subject matter jurisdiction.