Opinion issued January 29, 2009 










 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00096-CV

__________


AMERICAN ACADEMY OF EMERGENCY MEDICINE, Appellant


V.


MEMORIAL HERMANN HEALTHCARE SYSTEM, INC., TEAM
HEALTH, INC., AND ACS PRIMARY CARE PHYSICIANS-SOUTHWEST,
P.A., Appellees






On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 2007-52841-A






O P I N I O N

 Appellant, American Academy of Emergency Medicine ("AAEM"), challenges
the trial court's order granting the pleas to the jurisdiction of appellees, Memorial
Hermann Healthcare System, Inc., TeamHealth, Inc., and ACS Primary Care
Physicians-Southwest, P.A., in AAEM's suit for declaratory judgment. In its sole
issue, AAEM contends that the trial court erred in granting appellees' pleas and
dismissing its claims for lack of subject matter jurisdiction. 

 We affirm. 

Factual and Procedural Background

 AAEM is a non-profit corporation "formed to promote greater professionalism
in emergency medicine" with a "national membership of approximately 5,000
emergency physicians," many of whom practice emergency medicine in the State of
Texas." In this suit, (1) AAEM alleges that appellees are engaging in a business practice
that violates Texas laws prohibiting the corporate practice of medicine, including
laws prohibiting "non-licensed persons or entities from practicing medicine,
employing physicians, assisting in the unlicensed practice of medicine, . . . sharing
of professional fees with physicians," and "restraining trade in the emergency
medicine profession." (2) AAEM asserts that it has a "direct interest in the outcome of
the proceeding in that [it] represent[s] many practicing physicians in Texas and the
nation with professional interest in the enforcement" of Texas laws prohibiting the
corporate practice of medicine as well as an interest in the "use of non-competition
and non-solicitation agreements for emergency physicians" in Texas. 

 In its petition, AAEM generally complains of two alleged agreements that,
according to AAEM, violated the prohibitions against the corporate practice of
medicine. First, AAEM complains of an agreement between TeamHealth and
Memorial that allegedly provided that Memorial would pay TeamHealth for services
provided by physicians and TeamHealth would have "the exclusive right to hire,
terminate, manage, employ independently, contract or otherwise control the practice
of physicians at [a number of] Memorial hospitals." (3) Second, AAEM complains of
"independent contractor agreements" between ACS and unidentified physicians. 
AAEM alleges that TeamHealth "illegally employs" physicians under the terms of
these agreements, which AAEM characterizes as "disguised employment agreements
designed to circumvent Texas law and Federal tax law." AAEM asserts that
TeamHealth uses its alter ego, ACS, to execute the independent contractor
agreements with unidentified physicians and that ACS is "a shell that allows
TeamHealth to illegally employ physicians [and] acquire and hold emergency services
and physician contracts, such as those of Plaintiffs and to split professional fees of
physicians." AAEM alleges that, under these illegal agreements, the physicians are
"required to assign their right to receive the monies they earn." Finally, AAEM
complains that the agreements contain "restrictive covenants" that illegally restrain
the physicians who signed them from working at certain locations and for certain time
periods upon their termination. AAEM asserts that these "restrictive covenants" are
invalid under Texas law. 

 AAEM attached to its petition a copy of a document entitled "Physician
Independent Contractor Agreement," which states that it is made between ACS and
an unidentified "Physician." The agreement is not executed by any party and does
not name a particular physician, but rather is only a form agreement. Similarly, in the
attached exhibits to this document, the space for identifying the independent
contractor merely states "NAME & ADDRESS." Even AAEM describes this
agreement as one between "ACS and the prospective doctor." (Emphasis added). 

 AAEM seeks the following declarations:

1. The bidding process utilized by Memorial was a violation of
Texas law because it solicited and accepted illegal bids from
entities violating the corporate practice of medicine prohibitions
under Texas law;


2. The financial arrangements between TeamHealth and Memorial
violate the corporate practice of medicine by allowing fee
splitting with an unlicensed corporation;


3. The contract or understandings between Memorial and
TeamHealth as to the provision of medical practitioners at
Memorial are void as they violate the corporate practice of
medicine prohibition under Texas law;


4. A declaration that Defendants purchase medical groups,
employing physicians or holding emergency services contracts in
the State of Texas is a violation of the corporate practice of
medicine and such purchases, agreements, understandings or
assignments should be declared void as a matter of law;


5. A declaration that the use of restrict[ive] covenants in the
purported independent contract agreements unfairly limits
competition, reduces the availability of otherwise qualified
physicians to practice in Harris County, Texas and forces
physicians who are subject to such agreements to continue
working for an organization in the face of violations of standard
medical procedure;


6. A declaration that TeamHealth is not legally allowed to conduct
business in the State of Texas, and as such, its contract with
Memorial should be declared void. (4) 


 In their plea to the jurisdiction, TeamHealth and ACS argued, among other
things, that AAEM has no standing to bring claims for declaratory judgment and there
is no justiciable controversy because there is "no contract between" the parties. In
support of their standing and justiciability arguments, TeamHealth and ACS asserted
that although AAEM is seeking declarations that certain contracts violate the
prohibitions against the corporate practice of medicine, AAEM is not a party to the
contracts, has not suffered a distinct injury, and no real controversy exists between
the parties. In its plea to the jurisdiction, Memorial similarly asserted that AAEM
lacks standing and there is no jusiticiable controversy. (5) 

 In its response to appellees' pleas, AAEM asserted that it has associational
standing to bring suit. First, it asserted that "each of AAEM's Harris County
members could sue in their own right if they choose but [that] by doing so, they
would risk summary termination and enforcement of a one-year non-compete"
agreement. AAEM further asserted that "[s]ome of AAEM's members are working
for Memorial under the Memorial-TeamHealth arrangement now and certainly have
an interest in whether that arrangement is legal under Texas law or violative of their
personal obligations under Texas law." Second, AAEM asserted that its "interest in
the case is established by its mission and vision statement," which includes its
statements that the "role of emergency medicine management companies should be
to help physicians manage their practice," "the practice should be owned by and
controlled by the physicians and not by a management company," and "the practice
of emergency medicine is best conducted by a specialist in emergency medicine." 
Third, AAEM argued that it was not necessary for its individual members to
participate in the case because the trial court's "determination of the legality of the
Memorial/TeamHealth arrangement will apply to all members of the medical
profession practicing emergency medicine." In sum, AAEM argued that, although
it had not entered into a written contract with appellees, "by representing emergency
department physicians directly affected by the ruling sought," it had standing.

 In support of its response, AAEM filed an affidavit of Dr. Robert McNamara,
"Past Presidents Council Representative to [AAEM]," in which McNamara testified
that "AAEM has over 5,000 members, some of which practice emergency medicine
in Houston, Harris County, Texas" and that "[s]ome of its members are currently on
staff at the subject Memorial emergency departments." McNamara described
AAEM's principles and positions, stating that AAEM is concerned with the use of lay
persons in the medical decision process and that it "believes that Texas law prohibits
such individuals from practicing medicine without a license." McNamara further
testified that AAEM had "joined this suit to protect its members in Harris County,
Texas," it believed there were "legal ramifications threatening the licensure" of
physicians, and it concluded that the challenged practices were "not in the best
interest" of the patients in emergency departments. McNamara also stated that
AAEM is concerned with the use of covenants-not-to-compete in the independent
contractor agreements, asserting that such covenants restrict competition, disrupt
continuity of care, "potentially disrupt the public of medical services," and violate
"sound medical practices and medical ethics." McNamara explained that AAEM
sought to have this practice discontinued on behalf of its members. Finally,
McNamara testified that although AAEM's individual members could have brought
the suit, doing so would have jeopardized their career and subjected them to
economic sanctions and "professional pressures."

 In their replies, appellees asserted that AAEM had failed to remedy the
jurisdictional defects. Appellees argued, among other things, that because AAEM
had not shown that any of its members were parties to the contracts at issue, AAEM
had failed to affirmatively demonstrate that any of its members had standing to sue
in their own right, and, thus, any claim for associational standing failed. 

 The trial court granted appellees' pleas to the jurisdiction and dismissed
AAEM's claims. 

Standard of Review

 A plea to the jurisdiction seeks dismissal of a case for lack of subject-matter
jurisdiction. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). When
reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings
in favor of the plaintiff. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 226 (Tex. 2004); Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993). Whether a pleader has alleged facts that affirmatively demonstrate
a trial court's subject matter jurisdiction is a question of law that we review de novo.
See Tex. Dep't of Parks & Wildlife, 133 S.W.3d at 226. "Likewise, whether
undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is
also a question of law." Id. "If a plea to the jurisdiction challenges the existence of
jurisdictional facts, we consider relevant evidence submitted by the parties when
necessary to resolve the jurisdictional issues raised." Id. at 227. "If the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law." Id. at 228. "If the
evidence creates a fact question regarding the jurisdictional issue, then the trial court
cannot grant the plea to the jurisdiction." Id. at 227-28.

Associational Standing

 In its sole issue, AAEM argues that the trial court erred in granting appellees'
pleas and dismissing its claims for lack of subject matter jurisdiction because
AAEM's individual members could have sued in their own right, the interests of
AAEM were germane to its purposes, the members of AAEM did not have to be
parties to the suit as AAEM was not seeking damages, and the relief sought by
AAEM would benefit its members without their participation. The parties agree that
the central issue presented in this appeal is whether AAEM has associational standing
to bring suit. (6) 

 "The general test for standing in Texas requires that there (a) shall be a real
controversy between the parties, which (b) will be actually determined by the judicial
declaration sought." Tex. Ass'n of Bus., 852 S.W.2d at 446 (citation omitted). 
Additionally, an association claiming associational standing to bring suit must show
that: (1) its members have standing to sue on their own behalf, (2) the interests the
organization seeks to protect are germane to the organization's purpose, and (3)
neither the claim nor the relief requested requires the participation of individual
members in the lawsuit. S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 308 (Tex.
2007); Tex. Ass'n of Bus., 852 S.W.2d at 447-48; Wilchester W. Concerned
Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc., 177 S.W.3d 552, 561 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied). All parties agree that AAEM meets the
second requirement for associational standing. Thus, we focus on the first and third
requirements in determining whether AAEM has associational standing. 

 As a preliminary matter, we note that AAEM seeks declarations that can be
divided between those related to the alleged contract between TeamHealth and
Memorial governing TeamHealth's operations at Memorial's hospitals and those
related to the independent contractor agreements identifying the potential contracting
parties as ACS and unidentified, prospective physicians. We address the requested
declarations related to the independent contractor agreements separately from the
requested declarations related to the alleged TeamHealth and Memorial contract
because each category of declarations more clearly fails a different requirement for
associational standing. We then address AAEM's claims for declarations regarding
the restrictive covenants in the independent contractor agreements to the extent that
those claims are not resolved by our other holdings. 

 To meet the first requirement of associational standing, AAEM must show that
its members have standing to sue in their own right. S. Tex. Water Auth., 223 S.W.3d
at 308. This requirement "should not be interpreted to impose unreasonable obstacles
to associational representation," and the purpose of this requirement "is simply to
weed out plaintiffs who try to bring cases, which could not otherwise be brought, by
manufacturing allegations of standing that lack any real foundation." Tex. Ass'n of
Bus., 852 S.W.2d at 447 (citations omitted). 

 In regard to AAEM's claims for declarations related to the alleged contract
between Memorial and TeamHealth, AAEM has made no argument explaining how
its individual members would have standing to seek declaratory relief on this
contract. Although this contract is not contained in the record, it is undisputed that
neither AAEM nor its member physicians are parties to this contract. It is also
undisputed that AAEM does not represent any of the parties to the contract. The
membership of AAEM, according to AAEM's own allegations and evidence, is
limited to emergency physicians, and AAEM's alleged "direct interest" in the case
arises from the physician members' alleged "professional interest." Moreover, even
assuming that AAEM has alleged, or that the record contains evidence demonstrating,
that AAEM member physicians may be engaging in the corporate practice of
medicine at Memorial hospitals, there is nothing in the record to suggest that these
physicians are doing so pursuant to the Memorial TeamHealth contract. (7) For
example, there is no evidence, or even allegation, that the individual AAEM member
physicians are identified in the Memorial TeamHealth contract or that the Memorial
TeamHealth contract requires the employment of specific physicians, including those
who are AAEM members. There is also no evidence, or allegation, that the
physicians practicing at the Memorial hospitals are bound to or governed by the
Memorial TeamHealth contract in any way. Rather, to the extent that AAEM has
even alleged or that the record contains evidence demonstrating that AAEM member
physicians may be engaging in the corporate practice of medicine at Memorial
hospitals, it is clear that they must be doing so pursuant to the independent contractor
agreements. 

 Additionally, to the extent that the record before us even establishes the
existence of a real controversy involving AAEM member physicians, (8) we conclude
that the question of whether AAEM's member physicians are engaging in the
corporate practice of medicine at Memorial hospitals would not be resolved by
judicial declarations related to any contract between Memorial and TeamHealth. See
id. at 446 (reciting general test of standing as including requirement that controversy
"will be actually determined by the judicial declaration sought") (citations omitted). 
Thus, we hold that AAEM's allegations, as well as the evidence in the record,
affirmatively demonstrate that AAEM's member physicians would not have
individual standing to seek declaratory relief regarding the alleged contract between
Memorial and TeamHealth. Accordingly, we further hold that AAEM lacks
associational standing to pursue its declaratory claims related to this alleged contract. 
See S. Tex. Water Auth., 223 S.W.3d at 308 (concluding that no member of
association had demonstrated individual standing to contest contract and, thus,
association lacked standing to sue on behalf of its members). (9) 

 We now turn to AAEM's claims for declarations related to the independent
contractor agreements. To meet the third requirement of associational standing,
AAEM's pleadings and the record must demonstrate that "neither the nature of the
claim asserted nor the relief sought requires the participation of the individual
members in the lawsuit." 223 S.W.3d at 308. If an association seeks damages on
behalf of its members "or must otherwise prove the members' individual
circumstances to obtain relief, participation of the individual members is required,
and the third prong is not satisfied." Tex. Mun. League Intergovernmental Risk Pool
v. Burns, 209 S.W.3d 806, 815 (Tex. App.--Fort Worth 2006, no pet.). In contrast,
an association that "seeks only prospective relief, raises only issues of law, and need
not prove the individual circumstances of its members to obtain that relief" satisfies
the third requirement for associational standing. Tex. Ass'n of Bus., 852 S.W.2d at
447-48.

 In regard to AAEM's claims for declarations related to the independent
contractor agreements, AAEM asserts that some of its member physicians are on staff
at Memorial emergency departments and that, in order to work at these departments,
physicians are required to enter into independent contractor agreements. AAEM also
cites Dr. McNamara's testimony that AAEM member physicians are on staff at
Memorial emergency departments and that AAEM brought suit because it believed
there were "legal ramifications" to AAEM's physicians, and physicians generally, for
"participation in the corporate practice of medicine." AAEM also asserts that its
individual member physicians did not file suit because, by doing so, they would face
substantial risk to their professional careers and livelihoods. 

 As AAEM states in its appellate briefing, the "central question" in this suit is 
whether physicians, including its member physicians, are engaging in the corporate
practice of medicine in violation of Texas laws by practicing at Memorial hospitals
under some version of an independent contractor agreement, which AAEM asserts
is nothing more than a disguised employee agreement. We conclude that AAEM's
claims for declaratory relief on whether its physicians are violating Texas law by
practicing at Memorial hospitals under some version of an independent contractor
agreement, alleged to be similar to the form agreement attached to AAEM's petition,
do not present pure issues of law, but instead require individualized inquiry and fact-intensive analysis. See Tex. Soc'y of Prof'l Eng'rs v. Tex. Bd. of Architectural
Exam'rs, No. 03-08-00288-CV, 2008 WL 4682446, at *4 (Tex. App.--Austin Oct.
24, 2008, no pet.). 

 We recognize that AAEM has pleaded for declaratory relief, which may
sometimes present pure questions of law that do not require the participation of an
association's individual members. See Tex. State Bd. of Podiatric Med. Examiners
v. Tex. Orthopaedic Ass'n, No. 03-04-00253-CV, 2004 WL 2556917, at *3 (Tex.
App.--Austin Nov. 12, 2004, no pet.) (concluding that association seeking
declaration to invalidate rule adopted by state board defining foot as including part
of ankle met third prong of standing requirement because declaration sought by
association presented "question of law that [did] not require the participation of
individual members" and "relief sought [was] a declaratory ruling that would be
uniformly applied to physicians and podiatrists"). Here, however, based upon the
type of declarations AAEM is seeking, it will be necessary for a trial court to review
the particular conduct of the individual member physicians as well as the particular
contracts entered into by the individual member physicians to determine if the
physicians or TeamHealth, through its alleged alter ego ACS, are violating the
prohibitions against the corporate practice of medicine by entering into and
conducting themselves under the independent contractor agreements. See id. 

 In this case, AAEM seeks declarations related to a form contract that has not
been executed by any party. Even AAEM characterizes these independent contractor
agreements as agreements between ACS and prospective physicians. Without
evidence as to the terms of the agreements actually entered into by the AAEM
member physicians and the conduct of the parties under the challenged agreements,
a trial court would not be able to resolve the issues and to make declarations like
those sought by AAEM. In sum, we conclude that in order for AAEM to obtain
declaratory relief as to whether or not its individual physician members are engaging
in the corporate practice of medicine while practicing at Memorial hospitals, it would
be necessary for AAEM to provide evidence on the individual circumstances of its
members. See id. Accordingly, we hold that AAEM lacks associational standing to
pursue its declaratory claims related to the independent contractor agreements. 

 Finally, to the extent the above holdings do not resolve the entire issues raised
herein, we address AAEM's claims for declarations related to the restrictive
covenants contained in the form, non-executed independent contractor agreements. 
Here, AAEM has neither made any allegation nor presented any evidence
demonstrating that a real controversy exists in regard to these complained-of
covenants. For example, AAEM has not made any allegation that appellees have
sought to enforce a restrictive covenant contained in an agreement between ACS and
AAEM member physicians. AAEM only generally alleges that the use of restrictive
covenants is invalid under Texas law. The only evidence contained in the record
even remotely related to the existence of a real controversy between the parties is
McNamara's vague testimony about possible "legal ramifications threatening the
licensure" of individual physicians, but this testimony was not tied to the restrictive
covenants. We conclude that the pleadings and the record affirmatively demonstrate
the lack of a real controversy in this regard. Accordingly, we hold that AAEM lacks
associational standing to bring claims for declarations related to these restrictive
covenants. 

 We overrule AAEM's sole issue.

Conclusion


 We affirm the order of the trial court dismissing AAEM's claims for lack of
subject matter jurisdiction.


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.

1. AAEM filed suit jointly with Humble Emergency Physicians, P.A. ("HEPPA"). The
trial court severed AAEM's claims into a separate cause of action, and HEPPA is not
a party to this appeal. 
2. AAEM asserts that appellees violated, among other statutes, specific provisions of the
Texas Occupations Code. See Tex. Occ. Code Ann. § 164.051(a)(1) (Vernon 2004)
(stating that Texas Medical Board "may refuse to admit a person to its examination
or refuse to issue a license to practice medicine and may take disciplinary action
against a person if the person: (1) commits an act prohibited under Section 164.052");
Id. § 164.052(a)(5), (a)(17) (Vernon 2004) (stating that "physician or an applicant for
a license to practice medicine commits a prohibited practice if that person: (5)
commits unprofessional or dishonorable conduct that is likely to deceive or defraud
the public, as provided by Section 164.053, or injure the public; . . . (17) directly or
indirectly aids or abets the practice of medicine by a person, partnership, association,
or corporation that is not licensed to practice medicine by the board"); Id. §
164.053(a)(9) (Vernon 2004) (stating that "[f]or purposes of Section 164.052(a)(5),
unprofessional or dishonorable conduct likely to deceive or defraud the public
includes conduct in which a physician: (9) delegates professional medical
responsibility or acts to a person if the delegating physician knows or has reason to
know that the person is not qualified by training, experience, or licensure to perform
the responsibility or acts"); Id. § 165.156 (Vernon 2004) (stating, in section entitled
"Misrepresentation Regarding Entitlement to Practice Medicine," that "[a] person,
partnership, trust, association, or corporation commits an offense if the person,
partnership, trust, association, or corporation, through the use of any letters, words,
or terms affixed on stationery or on advertisements, or in any other manner, indicates
that the person, partnership, trust, association, or corporation is entitled to practice
medicine if the person, partnership, trust, association, or corporation is not licensed
to do so").
3. AAEM referred to an "emergency services agreement embodied in a letter of
understanding between Memorial and TeamHealth." The record does not contain a
copy of any such agreement, or any other agreement between Memorial and
TeamHealth, but it is undisputed that neither AAEM nor its individual physician
members are signatories to any agreement between Memorial and TeamHealth. 
4. Some of the declarations sought below relate more specifically to the claims brought
by HEPPA, which were severed into a separate action. In its petition, HEPPA
specifically complained of the bidding process conducted by Memorial for staffing
services at its emergency departments, which the parties represent was the bidding
process that TeamHealth ultimately won. HEPPA brought numerous business tort
claims related to this bidding process. Because HEPPA's claims were severed into
a separate action, we do not consider any of HEPPA's claims. In its reply brief,
AAEM concedes that some of the declarations relate to the relief sought by members
of HEPPA as members of AAEM.
5. In post-submission briefing, Memorial asserts that "the only allegations of harm
proffered in [AAEM's] petition and supporting evidence are hypothetical and
speculative scenarios" and that neither AAEM nor its members can "demonstrate a
likelihood of enforcement of criminal penalties related to the corporate practice of
medicine or a realistic danger to their licensure and practice."
6. It is undisputed that AAEM is not a party to any of the challenged contracts, and
AAEM is not arguing that it possesses standing individually to seek the declaratory
relief it has requested.
7. As noted by Memorial in its post-submission briefing, AAEM has not demonstrated
that "its individual members' medical licenses are 'subject to' the terms of the
contract between [Memorial] and TeamHealth or that their licenses or livelihood
could even be at risk or affected by the terms" of the alleged contract between
Memorial and TeamHealth. Moreover, AAEM has not alleged that any contract
between Memorial and TeamHealth "contains provisions that would subject AAEM's
individual members (as opposed to [Memorial and TeamHealth]) to sanction or
prosecution for violating the prohibition against the corporate practice of medicine."
8. For example, a real controversy might be demonstrated by evidence that AAEM
member physicians are facing threats to their licensing by practicing medicine at
Memorial's hospitals pursuant to the challenged contracts. See Tex. Ass'n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 447-48 (Tex. 1993) (concluding that Texas
Association of Business met first requirement of associational standing by showing
that its members had been assessed administrative penalties under challenged
enactments and by alleging that its members remained "at substantial risk of
penalty").
9. In support of its argument that a physician could, in his own right, "clearly" sue to
have "a practice that was violative of sound medical practice and ethics" declared
illegal and void, AAEM relies on Penny v. Orthalliance, Inc., 255 F. Supp. 2d 579
(N.D. Tex. 2003). AAEM reasons that an organization with members "affected by
contractual arrangements" should also be entitled to bring suit on the members'
behalf. However, the situation addressed in Penny is substantially different than that
addressed in the instant case. In Penny, individual dentists brought suit against
Orthalliance, a provider of business and consulting services to orthodontic entities,
because Orthalliance had failed to perform its obligations under a series of agreements
actually executed by the parties and third party practice groups. Id. at 579-80. The
individual dentists brought suit seeking declarations that the parties' agreements
constituted the unauthorized practice of dentistry, and the individual dentists
presented the court with specific contracts that they had entered into and operated
under with Orthalliance. Id. Penny did not involve claims brought by an association
seeking to represent the interests of members through obtaining declarations related
to form contracts that identified only prospective parties. See id. Moreover, although
the individual dentists in Penny sought declarations regarding a series of agreements
including some agreements between Orthalliance and practice groups to which they
were not parties, the record contained evidence that the individual dentists were
identified by name in these contracts. Id.